# In the United States Court of Federal Claims

**No. 25-48C**
**Filed: February 28, 2026**
**Reissued for Publication: May 15, 2026[1]**

```
* * * * * * * * * * * * * *   *
DANIEL B. SPARKS,                *
                Plaintiff,        *
        v.                        *
UNITED STATES,                    *
                                  *
                Defendant.        *
* * * * * * * * * * * * * *   *
```

**Wojciech Z. Kornacki**, Pentagon Law Office, Washington, DC, for plaintiff.

**William P. Rayel**, Senior Trial Counsel, Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, for defendant. With him were **Douglas K. Mickle**, Assistant Director, Commercial Litigation Branch, **Patricia M. McCarthy**, Director, Commercial Litigation Branch, and **Brett A. Shumate**, Assistant Attorney General, United States Department of Justice, Washington, DC. **Lieutenant Carlos A. Pagán**, Office of the Judge Advocate General, United States Navy, General Litigation Division, Washington, DC, of counsel.

## O P I N I O N

<u>**HORN, J.**</u>

On January 13, 2025, plaintiff, Daniel B. Sparks, a retired United States Marine Corps field grade officer, filed a complaint against the United States in the United States Court of Federal Claims. Plaintiff seeks review of a February 24, 2023 decision by the Board for Correction of Naval Records (BCNR) which upheld the reduction in his retired pay grade from Lieutenant Colonel (Pay Grade O-5) to Major (Pay Grade O-4), and an Other Than Honorable characterization of service. Plaintiff asks this court to set aside the BCNR decision, correct plaintiff's military records and "that the judgment be entered against Defendant to the maximum amount allowed by law." Plaintiff asserts that this court has jurisdiction over his complaint pursuant to 10 U.S.C. § 1370 (2024) and the Tucker

---

[1] This Opinion was issued under seal on February 28, 2026. The parties were asked to propose redactions prior to the public release of the Opinion. This Opinion is issued without redactions as the parties filed a submission with the court indicating the parties "have no proposed redactions to the Court's February 28, 2026 opinion."

Act, 28 U.S.C. § 1491 (2024). The parties have filed and fully briefed cross-motions for judgment on the Administrative Record and oral argument on the cross-motions for judgment on the Administrative Record was held.

**FINDINGS OF FACT**

According to the Administrative Record in the above captioned case, plaintiff Sparks enlisted in the United States Marine Corps on March 25, 1987 and was commissioned as an officer in the United States Marine Corps Reserve on March 17, 1995. On May 1, 2011, he was promoted to the rank of Lieutenant Colonel in the Marine Corps Reserve. Throughout plaintiff's service in the Marine Corps Reserve, he "was periodically activated." According to plaintiff's "Certificate of Release or Discharge from Active Duty," between 2013 and 2016, plaintiff was on active duty from May 13, 2014 to November 8, 2014 and from April 16, 2016 to August 14, 2016.

According to plaintiff's testimony at a Board of Inquiry, discussed below, in 2013 plaintiff was a member of the Individual Ready Reserve, and went to Korea where he participated in a command post exercise for approximately 45 days. Plaintiff also had civilian employment working as a project manager for a civilian contracting firm that was providing services to the "Joint IED Defeat Organization."[2] At his Board of Inquiry, plaintiff testified that he was mobilized to go on active duty at the Marine Forces Reserve Headquarters into the G3 section in New Orleans in March 2014.

In plaintiff's testimony at the Board of Inquiry, plaintiff stated that in 2015, he returned to Northern Virginia and was employed as a general manager for an aviation catering company.[3] From June 2015 to January 2016, plaintiff worked as a project

---

[2] At his Board of Inquiry, plaintiff testified the name of the organization also was called the "Joint Improvised Explosive Device Organization."

[3] Plaintiff's testimony at the Board of Inquiry included the following exchange with counsel:

Q. So I want to move into 2015 please. Tell us, did your New Orleans assignment transition into 2015 or was it over by then?

A. My New Orleans assignment transitioned into 2015.

Q. When the New Orleans assignment was complete, what was the next thing that you did work wise, either civilian or in the Marine Corps?

A. The orders ended. I returned to Northern Virginia. I searched and I found job as a general manager for an aviation catering company. I was sought out to do that and that was located at Dulles Airport.

Q. And did you have that employment throughout 2015?

A. I did not have that employment throughout 2015.

manager for a firm providing IT support and services to the National Reconnaissance Office.

In early 2016, plaintiff moved to Japan, and he went on active duty with III Marine Expeditionary Force G6 in Okinawa in February 2016.[4] Between June 2, 2016 and June 8, 2016, plaintiff took emergency leave from Japan because one of his sons was hospitalized in Virginia. Plaintiff also went back to Virginia from June 16, 2016 to June 25, 2016 to be with his son, to spend Father's Day with his children and his father, to attend mediation and marriage counseling, and to attend a government conference, after which he returned to Japan. Plaintiff left active duty while in Japan in March 2017, but stayed on in an IMA (Individual Mobilization Augmented) billet until October 2018. Plaintiff then moved to Abu Dhabi, where he lived from March 2017 to March 2018 and worked with Knowledge Point as the maritime subject matter expert on communications.

According to plaintiff, in 2008, plaintiff and his then-spouse, Tracy Sparks, adopted their daughter AS,[5] who suffered from a medical condition leading her to be overly active and engage in impulsive behaviors. Subsequently, AS also was diagnosed with Attention-Deficit/Hyperactivity Disorder and other medical conditions. At the time, plaintiff and Tracy Sparks had two biological sons together, "DS" and Korben Sparks. During the adoption process, it was discovered that their adoptive daughter AS had previously accused her biological mother's boyfriend of abuse and that she had engaged in sexually inappropriate behavior toward one of their two sons. According to plaintiff, he and Tracy Sparks discovered that AS watched a lot of pornography online. The Sparks family also discovered that AS posted oversexualized pictures of herself on Instagram, and listed herself on a dating site. Plaintiff claims AS told plaintiff that she looked a lot older than her age. In 2014, plaintiff and Tracy Sparks separated, and, in 2016, they initiated divorce proceedings. Plaintiff contends that by July 2016, Tracy Sparks told the children that she and plaintiff would get divorced and the children would have to relocate to Japan with plaintiff because the children "were stressing her out."

---

Q. Was there point time when it ended -- well, when it ended what did you do?

A. I left that position when I was selected by a firm to work at the National Reconnaissance Office. I was a project manager for a firm providing IT support and services to NRO. I started that job in 2015, and I was at that civilian job until 2016 when I went back to III MEF in Okinawa on active-duty orders.

[4] Plaintiff's motion for judgment on the Administrative Record states that in Japan, "he drilled in a Reserve unit two days a month."

[5] Throughout the Administrative Record, the Sparks' adopted daughter is addressed as "AS," "A.S.," "Miss ARS," "ARS," and "A[redacted]." Unless in quotations, which remain unchanged, this Opinion refers to the Sparks' adopted daughter as "AS."

3

On July 6, 2016, according to the June 8, 2018 Commanding General, III Marine Expeditionary Force's Report of Misconduct, discussed below, plaintiff's adopted daughter AS reported to her mother that her father plaintiff Sparks had been touching her inappropriately on various occasions over a nearly three-year period. AS informed her mother that the last attempted act occurred in June 2016 when plaintiff was home on leave from Japan. On July 8, 2016, AS's mother reported the allegations to the Fairfax County, Virginia, Child Protective Services. The Fairfax County, Virginia, Police Department assumed lead agency responsibilities, with the Naval Criminal Investigative Service (NCIS) providing limited assistance. On July 21, 2016, AS participated in a forensic interview. According to the Report of Misconduct, during the interview, AS made numerous allegations against plaintiff for conduct when AS was between 12 and 15 years old. The Fairfax County, Virginia, Police Department placed telephone calls to plaintiff in order to confront plaintiff with the allegations. In September 2016, the Deputy Commonwealth Attorney of Fairfax County declined to prosecute the case. Thereafter, the NCIS assumed lead agency responsibilities. On October 6, 2016, Fairfax County, Virginia, Child Protective Services "determined that a preponderance of the evidence—gathered pursuant to the agency's administrative investigation—established that Lieutenant Colonel Sparks had sexually abused Miss ARS, a Serious/Level One finding."

On September 18, 2017, the NCIS completed their investigation and forwarded the results of their investigation to the headquarters of the Commanding General, III Marine Expeditionary Force. On September 27, 2017, the Commanding General, III Marine Expeditionary Force directed that charges be preferred, ordered an Article 32, UCMJ preliminary hearing, and requested from the Secretary of the Navy authority to recall plaintiff involuntarily to active duty. On December 15, 2017, the Secretary of the Navy approved this request. Plaintiff was recalled to active duty and the charges were issued on February 27, 2018. Plaintiff was charged with violating the Uniform Code of Military Justice (UCMJ) between September 1, 2013 and June 30, 2016. Specifically, plaintiff was charged with violating UCMJ Articles 80, 120, and 133. After a preliminary hearing on April 10, 2018, "the Preliminary Hearing officer determined probable cause existed and recommended trial by general court-martial" on April 20, 2018. The Commanding General, III Marine Expeditionary Force referred the charges to a general court-martial on May 10, 2018, and plaintiff was arraigned on May 29, 2018.

On June 8, 2018, the Commanding General, III Marine Expeditionary Force, "directed that the referred charges be withdrawn and dismissed, without prejudice." The Commanding General, III Marine Expeditionary Force, stated in the Report of Misconduct that the "seriousness of Lieutenant Colonel Sparks' misconduct unquestionably warrants trial by general court-martial. However, significant issues arose after the Article 32 hearing which make [sic] the officer's amenability to court-martial jurisdiction unlikely." (alteration added). On June 8, 2018, the Commanding General, III Marine Expeditionary Force sent a Report of Misconduct regarding plaintiff to the Deputy Commandant for Manpower and Reserve Affairs, and requested that the Deputy Commandant for Manpower and Reserve Affairs do the following:

> exercise your authority as the Show Cause Authority for the Marine Corps and direct that:

    a. A Board of Inquiry (BOI) be convened to recommend whether Lieutenant Colonel Sparks should be involuntarily retired from the Marine Corps for misconduct (including those military offenses contained in enclosure (5), Article 133, UCMJ, and any other qualifying military offense you deem appropriate) and moral dereliction; and,

    b. The BOI be authorized to make a characterization of service recommendation, with the least favorable characterization of service being Under Other Than Honorable Conditions, if involuntary retirement is recommended by the board.

Plaintiff acknowledged receipt of the Report of Misconduct on the same day, in an "Acknowledgement of Receipt of Report of Misconduct and Inclusion of Adverse Material in Official Military Personnel File," and selected the option: "I do not desire to submit a statement and understand that this letter will be included in my OMPF [Official Military Personnel File] if DC M&RA [Deputy Commandant for Manpower and Reserve Affairs] elects to include the adverse material in my OMPF." (alteration added). On September 24, 2018, the Deputy Commandant for Manpower and Reserve Affairs directed the Commanding General, III Marine Expeditionary Force, to convene a

Board of Inquiry (BOI) for a recommendation as to whether Lieutenant Colonel Sparks should be involuntarily retired from the Marine Corps and, if retirement is recommended, whether Lieutenant Colonel Sparks should be retired in his current grade or a lesser grade, as well as a recommendation as to characterization of service, with the least favorable characterization being Under Other Than Honorable Conditions. . . . The specific reasons for separation to be considered by the Board [Board of Inquiry] are misconduct and moral dereliction as evidenced by the following:

misconduct and moral dereliction as evidenced by the following:

    a. Commission of a military offense which could be punished by confinement of six months or more, or any other misconduct which would require specific intent for conviction—specifically, Articles 80 (Attempt to commit rape of a child who has attained the age of 12 years old), 120b (Rape by force of a child who has attained the age of 12 years old), and 133 (Conduct unbecoming an officer), UCMJ.

    b. Sexual perversion.

(alteration and omission added). The alleged commission of a military offense which could be punished by confinement of six months or more or sexual perversion, which the Board of Inquiry considered were:

a. Violations of Article 80, UCMJ.

(1) Specification 1: [Attempt to Commit Rape by force of a child who has attained the age of 12, 120b(a) (2)] Between on or about 1 June 2016 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks attempted to commit sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by attempting to use force against Ms. ARS to penetrate her mouth and vulva with a part of his body, with the intent to arouse and gratify his own sexual desire.

(2) Specification 2: [Attempt to Commit Sexual Assault of a child who has attained the age of 12 involving penetration of vulva or anus or mouth by any part of the body or any object, 120b(b)] Between on or about 1 June 2016 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks attempted to commit sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by attempting to penetrate her mouth and vulva with a part of his body, with the intent to arouse and gratify his own sexual desire.

(3) Specification 3: [Attempt to Commit Sexual Abuse of a child by sexual contact involving the touching of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, 120b(c)] Between on or about 1 June 2016 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks attempted to commit sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by attempting to touch Ms. ARS's breasts and genitalia, with the intent to arouse and gratify his own sexual desire.

b. Violations of Article 120b, UCMJ.

(1) Specification 1: [Rape by force of a child who has attained the age of 12, 120b(a) (2)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by using force against Ms. ARS to penetrate her vulva with his finger, with the intent [sic] arouse and gratify his own sexual desire.

(2) Specification 2: [Rape by force or [sic] child who has attained the age of 12, 120b(a) (2)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by using force against Ms. ARS to penetrate her vulva with his tongue, with the intent [sic] arouse and gratify his own sexual desire.

(3) Specification 3: [Rape by force or [sic] child who has attained the age of 12, 120b(a) (2)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by using force against Ms. ARS to penetrate her mouth with his finger, with the intent [sic] arouse and gratify his own sexual desire.

(4) Specification 4: [Sexual assault of a child who has attained the age of 12 involving penetration of vulva or anus or mouth by any part of the body or any object, 120b(b)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by penetrating Ms. ARS's vulva with his fingers, with an intent to arouse and gratify his own sexual desire.

(5) Specification 5: [Sexual assault of a child who has attained the age of 12 involving penetration of vulva or anus or mouth by any part of the body or any object, 120b(b)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by penetrating Ms. ARS's vulva with his tongue, with an intent to arouse and gratify his own sexual desire.

(6) Specification 6: [Sexual assault of a child who has attained the age of 12 involving penetration of vulva or anus or mouth by any part of the body or any object, 120b(b)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by penetrating Ms. ARS's mouth with his fingers, with an intent to arouse and gratify his own sexual desire.

(7) Specification 7: [Sexual abuse of a child by sexual contact involving the touching of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, 120b(c)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed lewd acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by intentionally and directly touching Ms. ARS's breasts and genitalia, with an [sic] intent to arouse and gratify his own sexual desire.

(8) Specification 8: [Sexual abuse of a child by sexual contact involving the touching of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, 120b(c)] On divers occasion between on or about

7

1 September 2013 and on or about 30 June 2016, at or near Centerville, VA. U.S. Marine LtCol Daniel Sparks committed lewd acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by intentionally causing Ms. ARS to directly touch his penis, with an intent to arouse and gratify his own sexual desire.

(9) Specification 9: [Sexual abuse of a child by sexual contact involving the touching of any body part, 120b(c)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed lewd acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by intentionally kissing, hugging, and grinding on Ms. ARS, with an intent to arouse and gratify his own sexual desire.

c. A violation of Article 133, UCMJ. Specification: [Conduct unbecoming an officer and a gentleman] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks sexually abused his adopted daughter, Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, and that, under the circumstances, these acts constituted conduct unbecoming an officer and a gentleman.

(alterations in original except for [sic]). According to the transcript of the Board of Inquiry proceedings, during the Board of Inquiry, an Assistant Recorder explained that the three Article 80 violations are "charged in the alternative," such that the members of the Board of Inquiry could only substantiate one Article 80 violation. Also, according to the transcript of the Board of Inquiry proceedings, an Assistant Recorder explained that Article 120b Specifications 1 through 3 are alternatives of 4 through 6.

On October 29, 2018, the Commanding General, III Marine Expeditionary Force sent a letter notifying plaintiff about the Board of Inquiry. Plaintiff acknowledged this notification on November 13, 2018. The Board of Inquiry was convened from December 19, 2018 to December 20, 2018. Regarding the composition of the Board of Inquiry, at the beginning of the proceeding, the Recorder[6] stated that "[t]he following member is a reserve officer as is the respondent, Colonel Sean W. Maita." (alteration added). During voir dire of the members of the Board of Inquiry, Colonel Maita stated "[m]y current billet is the director of the Office of Marine Forces Reserves and it's up at the Naval Support

---

[6] According to Department of Defense Instruction 1332.30, Section 5.3: "The government may be represented before the board [BOI] by a recorder whose duties will be prescribed by the Secretary of the Military Department concerned." Department of Defense Instruction 1332.30 § 5.3 (May 11, 2018) (alteration added).

Facility in Arlington." (alteration added). Plaintiff's then civilian counsel[7] did not question Colonel Maita during voir dire and made no challenges before starting the proceeding.

During opening statements, the Recorder and plaintiff's civilian counsel referenced the issue of personal jurisdiction. The Recorder stated:

> After the report [of plaintiff's sexual abuse of AS] was made, Fairfax County decided to not prosecute, and declined prosecution for this case. Following that decision, the Marine Corps, after referring charges and arraigning the respondent, determined that the evidence was insufficient to prove beyond a reasonable doubt that jurisdiction existed under the Uniform Code of Military Justice, and those charges were withdrawn, meaning there was insufficient evidence to show that the respondent was on active duty during the time of the charged offenses. And so those charges were withdrawn. Procedurally, the case then proceeded to a report of misconduct with the recommendation for a board of inquiry, which ultimately led to us being here today.

(alteration added). In his opening statement, plaintiff's civilian counsel stated plaintiff was on an Individual Mobilization Augmented billet

> in Okinawa, so General Nicholson directed an Article 32 investigation. You may be familiar with this if you've been in a court. You have some idea of this. Colonel Jim Bartolotto, senior Marine Corps judge advocate, smart guy, was given most of what you have minus the SRB [Selective Retention Bonus] stuff, essentially. He - - I will tell you he recommended trial, and he identified that there were some jurisdictional issues, but one of his recommendations was very solid. There is jurisdiction over some of these charges just not all of them. I'm not going to - - I'm going to try to avoid lawyering you on this because this issue is about your status when you are a reserve officer whether you are on orders, IMA, ADT [Active Duty Training], whatever. Okay. So I just want to make that clear is - - he, in fact, determined there would be jurisdiction on some of those charges.

(alterations added).

During the proceeding, the Board of Inquiry members heard testimony from AS, Maria Bonilla,[8] the forensic interview specialist who had interviewed AS, plaintiff, and

---

[7] Plaintiff's civilian counsel before the Board of Inquiry also represented plaintiff when plaintiff applied to the BCNR. Plaintiff's is represented by different counsel in this court .

[8] Ms. Bonilla worked for Safe Spot Children's Advocacy Center, and Ms. Bonilla testified at the Board of Inquiry that AS's case "was referred to my center [Safe Spot Children's Advocacy Center] by Fairfax County Police Department and Fairfax County Child Protective Services." (alteration added).

Tracy Sparks.[9] The Board of Inquiry watched recordings of AS's forensic interview, heard telephone calls from the Fairfax County, Virginia, Police Department to plaintiff, and heard a recording of the NCIS interrogation of plaintiff. The Board of Inquiry also reviewed a series of exhibits.[10] After receiving all of the testimony and exhibits, but before the Board of Inquiry deliberated, the Senor Board Member asked if either side had any objections, the Reporter stated: "Thank you, sir. No objections," and plaintiff's civilian counsel stated: "Yeah. I'm fine. Thank you."

After deliberating on December 20, 2018, the Senior Board Member of the Board of Inquiry announced the findings and recommendations of the Board of Inquiry:

> The Board [of Inquiry] found that a preponderance of the evidence proved the acts alleged in violation of Article 120b Specifications 1, 2, 3, 7, 8, and

---

[9] A discussion of infidelity arose during Tracy Sparks' testimony. During direct examination by the Assistant Recorder, Tracy Sparks testified: "I found out about things that caused the divorce in 2010, infidelity." There was also a discussion during cross examination by plaintiff's civilian counsel:

Q. [Plaintiff's civilian counsel] Okay. I think I may have misheard you. I think you said that you wanted to get divorced because of infidelity; is that right?

A. [Tracy Sparks] Infidelity, anger management, financial issues, there was a lot of - - it just seemed irreconcilable at the time.

Q. Okay.

A. We tried for four years, and, you know, you could forgive that, the infidelity and work through those issues, but abusing a child is unforgivable.

Q. Okay. And the infidelity would be mutual?

A. Later, yes, But no. Initially it was his from - - he told me that. He owned up to all of that in 2010. So there was never an issue of whether not infidelity occurred.

Q. Did you own up to yours?

A. Mine was not until later. Yes. I did.

(alterations added).

[10] The exhibits before the Board of Inquiry included the Board of Inquiry direction letter; the Board of Inquiry notification letter; the Board of Inquiry appointment letter; the June 8, 2018 Report of Misconduct; the Department of Special Services Individual Education Program for AS; a diagnosis for AS; and plaintiff's official military profile.

> 9, and in violation of Article 133, UCMJ. The Board [of Inquiry] found that the acts alleged in violation of Article 80, and the acts alleged in violation of Article 120b Specifications 4, 5, and 6, were not substantiated. In light of these findings, the Board [of Inquiry] found that both specific reasons for separation, detailed in paragraph 4 above, were supported by the evidence.

(alterations added). "The Board [of Inquiry] recommended that the respondent be retired in the lesser grade of Major/O-4" and "that the respondent's service be characterized as Other Than Honorable." (alteration added). On March 13, 2019, the Senior Board Member of the Board of Inquiry sent these findings and recommendations to the Secretary of the Navy in a Report of the Board of Inquiry. During the announcement of the Board of Inquiry's findings and recommendations, and in the Senior Board Member's Report of the Board of Inquiry, the Senior Board Member of the Board of Inquiry stated: "The Board [of Inquiry] did not consider any preservice misconduct." "The Board [of Inquiry] did not consider misconduct identified more than five years prior to the initiation of processing for retirement." "There is no minority report." (alterations added).

On April 9, 2019, plaintiff acknowledged receipt of the Report of the Board of Inquiry and that the Report of the Board of Inquiry would be "forwarded to the Deputy Commandant, Manpower and Reserve Affairs (DC M&RA) for a decision on whether the material will be included in my Official Military Personnel File (OMPF)." Plaintiff did not submit a statement in response to the Board of Inquiry's Report. The Commanding General, III Marine Expeditionary Force endorsed the Report of the Board of Inquiry on May 8, 2019. The Commandant of the Marine Corps also endorsed the Report of the Board of Inquiry, as indicated by a memorandum signed by the Deputy Commandant for Manpower and Reserve Affairs. On November 22, 2019, the Assistant Secretary of the Navy, Manpower and Reserve Affairs approved the Commandant of the Marine Corps' endorsement memorandum.

In a March 31, 2020 memorandum, plaintiff was notified that "[t]he Assistant Secretary of the Navy, in reference (a) [JPL Memo of 22 Nov 2019], directed your involuntary retirement with an Other Than Honorable characterization of service and in the lesser-grade of major." (alterations added). Plaintiff was involuntarily transferred to the Retired Reserve Awaiting Pay at Age Sixty, effective April 1, 2020, and was involuntarily retired in the rank of Major on August 16, 2022. Subsequently, plaintiff received a Certificate of Retirement, dated August 16, 2022, reflecting that he was honorably retired in the rank of Lieutenant Colonel. Defendant contends that "[t]his certificate was issued in error, as Major Sparks' retired rank was reduced to Major, and his characterization of service is Other Than Honorable."[11] (alteration added).

---

[11] On his Department of Defense Form 149 (Application for Correction of Military Record) (DD Form 149), dated August 16, 2022, plaintiff checked the box indicating that his characterization of service was "Honorable." In addition, in the section titled "Additional Remarks/Continuation of Information," Plaintiff stated "[i]n 2018, the Board of Inquiry recommended Lt Col (ret.) Sparks for separation with an other than honorable characterization of service, but he recently received a certificate of honorable retirement.

11

In August 2022, [12] plaintiff submitted to the BCNR an "Application for Correction of Military Record," requesting that the BCNR "1) set aside his retirement in pay grade of O-4; 2) retire Lt Col (ret.) Sparks in the pay grade of O-5; and 3) correct all other military records." Plaintiff contended:

> The corrections should be made because Lt Col (ret.) Sparks qualifies to retire in the rank of O-5. Lt Col (ret.) Sparks asserts that his Board of Inquiry was improperly constituted because the only reserve officer board member (Col Maita) was 'the director of the Office of Marine Forces Reserves' which suggests that he was an active reserve officer on full time status. In addition, Lt Col (ret.) Sparks was not allowed to request a minority member, the allegations were not supported by the evidence, and reducing him in rank is unjust and unfair.

In his application to the BCNR, plaintiff argued that he qualified for retirement in the rank of lieutenant colonel because: Secretary of the Navy Instruction (SECNAVINST) 1920.6C[13] states "that the Board of Inquiry is required to recommend the grade in which the officer last served satisfactorily for a period of not less than 6 months." Plaintiff claimed that he "was promoted to the rank of Lt Col. on 1 May 2011. He was honorably retired 16 August 2022," and, therefore, plaintiff has "served for over 3 years in the grade of O-5 and is eligible to retire in that rank for pay purposes." Additionally, plaintiff argued that the Board of Inquiry was not properly composed. Plaintiff stated that "SECNAVINST 1920.6C requires that in the cases of Reserve commissioned officers, at least one member be a Reserve Officer," however, plaintiff argued that "the recorder presented Col Sean W. Maita as a Reserve officer." Plaintiff stated that "it appears Col Maita served in full-time status or active Reserve because he explained that his current billet was the Director of

---

Lt Col (ret.) Sparks did not receive a final DD Form 214." (alteration added). In his written petition to the BCNR, citing to an exhibit he had submitted which contained a copy of his Certificate of Honorable Discharge, plaintiff stated that "he has been honorably retired from the U.S. Marine Corps on 16 August 2022." In an Advisory Opinion dated November 22, 2022, the Head of the Marine Corps Military Personnel Branch wrote "Applicant's retirement certificate contains obvious administrative errors (which inure to his benefit). He was not honorably retired as a lieutenant colonel, as the certificate states—he was retired in the lesser grade of major with an other than honorable characterization of service."

[12] The Advisory Opinion from the Head of the Marine Corps Military Personnel Branch states the petition to the BCNR was filed on August 16, 2022, and the application itself is dated August 16, 2022. Plaintiff's response to the Advisory Opinion, and the BCNR's letter acknowledging receipt of plaintiff's application, however, state that plaintiff submitted his application on August 25, 2022.

[13] Throughout this Opinion, the court will reference Secretary of the Navy Instruction (SECNAVINST) 1920.6C (Aug. 26, 2015), which is the applicable regulation in place at the time of plaintiff's separation proceedings.

12

the Office of Marine Forces Reserves, at the Navy Support Facility in Arlington." Plaintiff argued "[b]ecause it appears that the only 'Reserve' officer was in full time status / active Reserve and not in Reserve officer status – like Lt Col (ret.) Starks [sic], his rights were violated and the BOI was improperly convened." (alterations added). Plaintiff also contended that he was denied due process because there were no minority members present at his Board of Inquiry. As described below, the Administrative Record does not reflect that plaintiff requested a minority member as part of his Board of Inquiry.

Plaintiff also argued to the BCNR that the Board of Inquiry made arbitrary and capricious findings that were not supported by the evidence, specifically that the Board of Inquiry erred because there was no evidence to corroborate the allegations of misconduct between 2013 and 2016. Plaintiff argued that there were no eyewitness corroborations of the allegations. Plaintiff also stated that AS also alleged that Tracy Sparks was in the house when AS claimed she was assaulted, but Tracy Sparks did not hear anything." Plaintiff also stated that "Tracy, DS, and Korben [AS's two brothers] never observed any questionable activity and AS never told them about anything – until she was told that she would have to relocate." (alteration added). Plaintiff cited to seven declarations written in support of plaintiff and said "[n]one of the numerous individuals who visited the house, babysat AS, and otherwise interacted with her and other family members observed any suspicious activity." (alteration added). In addition, plaintiff contended that "AS only made the allegation after she was told that she would have to relocate due to the divorce proceedings. She never told her therapist about them." Plaintiff also contended that: "During the NCIS investigation, Agent Dittmer pointed out that AS was in trouble with her parents and only made the allegation when she seemed to perceive that based on the divorce she would have to move out from the house and live with Lt Col (ret.) Sparks."[14] Plaintiff also argued Fairfax Count [sic] Deputy Commonwealth Attorney declined prosecution based on lack of any corroborating evidence." (alteration added; footnotes added).[15] Furthermore, plaintiff contended that the Board of Inquiry "never considered the

---

[14] The August 8, 2016 email was sent from Detective Patrick Dittmer, Major Crimes Division, Criminal Investigation Bureau, Fairfax, Virginia, with the subject line "[Non-DOD Source] Re: Interview of Suspect Sparks." It states:

> Like I told SA McMains and others I've spoken too [sic]. The alleged victim was in trouble with her parents before [sic] This caused the mother to say that the kids had to go with her father she's too stressed out that is when the disclosure came out. The daughter said something like she didn't want to go with dad. Is this because she was in fact abused or did she say the allegation because she didn't want to go with dad. Albeit they were still in the same house.

(alterations added).

[15] The excerpt cited by plaintiff from the NCIS entry states: "On 09Sep16, Katherine E. STOTT, Deputy Commonwealth Attorney of Fairfax (VA) County, CIV declined to prosecute due to the lack of corroborating evidence; Exhibit (3) pertains."

substantial evidence of AS's oversexualization. The evidence shows that AS molested DS, made unsupported allegations against her mother's boyfriend, posted sexualized pictures on Instagram, watched sexual acts on Pornhub and other pornographic websites, and had to be send [sic] to a special camp to correct her behavior." (alteration added). Plaintiff argued that "[a]ll this evidence suggests that AS's allegation and the timing of it is not credible." (alteration added). Finally, plaintiff argued that the interests of justice and equity strongly suggest that plaintiff should be retired in the pay grade of O-5. Plaintiff contended:

> The irrefutable evidence demonstrates that Lt Col (ret.) Sparks has served faithfully and honorably in the U.S. Marine Corps during his entire service and since 1 May 2011 in the rank of Lt Col. Outside of this questionable, uncorroborated, untimely, and not credible allegation – that was likely motivated by AS's desire to stay in the same residence – she continues to contact Lt Col (ret.) Sparks. In fact, the evidence shows that it was AS who abused DS.

(internal references omitted). Plaintiff also claimed that Tracy Sparks' actions suggested she did not believe AS's allegations. In addition, plaintiff argued that, financially, "[t]he reduction in rank unjustly punishes not only Lt Col (ret.) Sparks but also his family, including AS and DS," because in "2017, Lt Col (ret.) Sparks signed the Marital Settlement Agreement where he promised to support his children. Paragraph 11 states that the 'parties have agreed to equally divide the marital portion of Husband's disposable military retired pay…'." (omission and emphasis in original; alteration added). In support of his application to the BCNR, plaintiff submitted 25 exhibits to the BCNR.[16]

On November 22, 2022, at the BCNR's request, the Head of the Marine Corps Military Personnel Law Branch provided an Advisory Opinion to the BCNR on plaintiff's application, with the opinion that plaintiff's "request should be denied." The Advisory Opinion explained that the "BCNR should not consider the application because it was not

---

[16] The exhibits to plaintiff's application to the BCNR included: Plaintiff's Certificate of Honorable Retirement; Declarations in support of plaintiff; a letter from plaintiff's clinical psychologist, Dr. Michaelson; the transcript of the Board of Inquiry proceeding; emails between plaintiff and Tabitha Kelly from the adoption agency; text messages between AS and Plaintiff; text messages from Tracy Sparks to a group, including plaintiff, in which "Tracy requested that Lt Col (ret.) Sparks contact AS to support her during the VA Challenge Academy;" a photo of AS, one of plaintiff's sons, and plaintiff on Father's Day in 2016; a photo of plaintiff's injuries allegedly inflicted by Tracy Sparks; plaintiff's Master Brief Sheet and Fitness Reports; an email from Detective Patrick Dittmer about the "Interview of Suspect Sparks;" the letter withdrawing and dismissing the charges that had been referred to a general court martial; plaintiff and Tracy Sparks' Marital Settlement Agreement; and an excerpt from an NCIS investigative entry.

14

filed within three years of when Applicant reasonably should have discovered the alleged error or injustice:"[17] According to the Advisory Opinion:

> <u>Applicant's petition is untimely</u>. . . . Applicant's counsel filed reference (a) "[LtCol Sparks DD149 of 16 Aug 22 w/encls"] on 16 August 2022, but indicated the purported error occurred on 19 December 2018—the date the BOI was convened. Applicant contends he discovered the error on 16 August 2022—the date, According to Applicant, that he was notified he had been retired form the Marine Corps. However, all of the alleged errors occurred during the BOI hearing. Accordingly, a reasonably prudent person would have discovered the alleged errors no later than 20 December 2018, when the board [the Board of Inquiry] delivered its recommendations.

(emphasis in original; alterations and omission added; footnotes omitted). The footnotes in the Advisory Opinion stated: "Note also that Applicant failed to raise any allegations of error when he acknowledged receipt of the report of BOI on 9 April 2019," and:

> Assuming as true Applicant's dubious assertion that his attorney submitted a 412 page petition the same day he discovered the purported errors, Applicant has not explained why he first discovered the alleged errors on 16 August 2022--that date was merely when Applicant transferred to the retired list with pay upon reaching the age of 60. <u>See</u> enclosure (1), p. 2. Note also that Applicant's retirement certificate contains obvious administrative errors (which inure to his benefit). He was not honorably retired as a lieutenant colonel, as the certificate states--he was retired in the lesser grade of major with an other than honorable characterization of service.

(emphasis in original). The Advisory Opinion also reasoned that "Applicant's retirement grade determination was not erroneous or unjust." The Advisory Opinion stated that although plaintiff met the minimum time in grade requirements for retirement in grade by completing 11 years of service in the rank of lieutenant colonel, per SECNAVINST

---

[17] Section 1552(b) of Title 10 of the United States Code provides:

> No correction may be made under subsection (a)(1) unless the claimant (or the claimant's heir or legal representative) or the Secretary concerned files a request for the correction within three years after discovering the error or injustice. The Secretary concerned may file a request for correction of a military record only if the request is made on behalf of a group of members or former members of the armed forces who were similarly harmed by the same error or injustice. A board established under subsection (a)(1) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

10 U.S.C. § 1552(b) (2024).

1920.6C, Enclosure 6, "retirement in a lesser grade is appropriate if 'the officer's misconduct was serious enough to constitute a significant departure from the conduct required of officers of the Naval Service.'" Also, the Advisory Opinion stated: "On the other hand, retirement in current grade is appropriate only if 'in spite of the misconduct, [the officer's performance] is otherwise so meritorious as to demonstrate the officer served satisfactorily in the grade currently held.'" (alteration in original).[18] The Advisory Opinion also stated:

> In this case, Applicant's retirement in grade was clearly unwarranted. A BOI substantiated that Applicant had committed, among other offenses, violations of Article 120b (Rape by force of a child who has attained the age of 12 years old), UCMJ—a crime punishable by life imprisonment and a mandatory dishonorable discharge, had Applicant been convicted of the same at a court-martial. Reference (e), Appendix 12. CG, III MEF [Commanding General, III Marine Expeditionary Force] stated that he based his recommendation to retire Applicant as a major with an other than honorable characterization "based on the incredibly heinous nature of his misconduct . . . [conduct that] is not just a significant departure from that expected of Marine officers, [but] an extreme departure." DC M&RA [Manpower & Reserve Affairs] used similar adjectives to describe Applicant's conduct and found that, "because [Applicant's] conduct occurred as a lieutenant colonel, the last grade at which he served honorably was major."

(omission in original; first and fourth alterations added).[19]

---

[18] The unaltered sentence from SECNAVINST 1920.6C, Enclosure 6, paragraph 1.a. states: "However, when the officer's record, in spite of the misconduct, is otherwise so meritorious as to demonstrate the officer served satisfactorily in the grade currently held, the recommendation should be for retirement in that grade." SECNAVINST 1920.6C, Enclosure 6 ¶ 1.a. (Aug. 26, 2015).

[19] The more complete quotation from the Commanding General, III Marine Expeditionary Force was:

> I would continue to recommend that Lieutenant Colonel Sparks receive an Under Other Than Honorable Conditions characterization of service and be retired in the lesser grade of major/ 0-4 based on the incredibly heinous nature of his misconduct. Lieutenant Colonel Sparks' conduct is not just a significant departure from that expected of Marine officers, it is an extreme departure. His conduct and character are antithetical to those expected of Marine officers.

16

The Advisory Opinion further stated that the timing of plaintiff's misconduct, and the seriousness of the misconduct in comparison to his performance and service in the military, "supported retiring him in a lesser grade." The Advisory Opinion instructed:

> Although not explicitly addressed by the chain of command, the timing of Applicant's misconduct supported retiring him in a lesser grade—Applicant allegedly committed the first instance of forcible rape on or about 1 September 2013, when he had been a lieutenant colonel for only 28 months. To retire Applicant in grade would have required a finding under reference (d) [SECNAVINST 1920.6C] that, "in spite of the misconduct, [Applicant's performance was] otherwise so meritorious as to demonstrate the officer served satisfactorily in the grade currently held." That is not a close analysis here—the BOI substantiated misconduct that is punishable be [sic] life in prison. On the other hand, Applicant's master brief sheet indicates that 100% his reporting seniors ranked him in the bottom third of lieutenant colonels, while his reviewing officers ranked 100% of lieutenant colonels ahead of him at processing. Reference (a), p. 412. [Plaintiff's Petition to the BCNR and exhibits] Given the incredibly severe nature of Applicant's conduct and its occurrence early in Applicant's otherwise unremarkable service as a lieutenant colonel, retirement in a lesser grade was clearly appropriate.

(second alteration in original).

The Advisory Opinion also determined that the Board of Inquiry "was properly convened." Regarding the requirement in SECNAVINST 1920.6C that "in cases where the respondent is a Reserve commissioned officer, '[a]t least one member must be a Reserve officer,'" the Advisory Opinion stated that "the record indicates this requirement was satisfied: The BOI appointing order lists the title of one member as 'U.S. Marine Corps Reserve.'" (citing SECNAVINST 1920.6C, Enclosure 8, ¶ 4.b. (Aug. 26, 2015)) (alteration in original). Also, the Advisory Opinion stated, "[d]espite Applicant's complaint, there is no prohibition against a Reserve member being in a 'full time status'[20] or in the Active Reserves." (footnote in original; alteration added). The Advisory Opinion further stated

> even if the regulations required a particular type of reservist, Applicant did not provide convincing evidence that the BOI member was anything other than a member of the Selected Marine Corps Reserves (SMCR) (i.e., a standard drilling reservist). Applicant argues the member's billet as the Director of the Office of Marine Forces Reserves calls his reserve status into question. However, O-6 members of the SMCR commonly hold director

---

[20] Footnote 5 in the Advisory Opinion stated: "Presumably, Applicant means a reservist serving in an Individual Mobilization Augmented (IMA) billet or on Active Duty Operational Support (ADOS) orders."

level billets. In the absence of substantial evidence to the contrary, BCNR should presume the reserve member requirement was met.

In addition, the Advisory Opinion stated:

> Applicant waived the issue when his civilian counsel did not object to seating the members after voir dire. The decision not to inquire about or object to the member's reserve status could have been tactical: The member indicated that just two weeks prior, he sat as a member on a BOI that had unsubstantiated all allegations."

(citations omitted). Moreover, the Advisory Opinion stated, regarding plaintiff's claim that the Board of Inquiry was not properly convened, "Applicant made no argument, provided no evidence, and did not demonstrate why, if there was an error, the error was material or unjust."

The Advisory Opinion also addressed plaintiff's argument that "he was denied due process and fair treatment because 'there were no minority members present at the BOI,'" and concluded:

> Applicant notes that Army regulations allow a respondent to request a minority member, but reference (d) [SECNAVINST 1920.6C] does not. Applicant has not cited to any case law nor provided any argument to explain why procedural differences between the two regulations would constitute a due process violation. Furthermore, Applicant did not provide any evidence to support his assertion that none of the members on his panel were a minority. Finally, Applicant waived the issue by neither requesting a minority member, nor objecting to any of the members who were seated for his BOI.

(alteration added). The Advisory Opinion also determined that the Board of Inquiry's "findings were not arbitrary and capricious," and stated:

> g. <u>The BOI's findings were not arbitrary and capricious.</u> Applicant next argues the BOI's findings were arbitrary and capricious because "there is no evidence to corroborate the allegations of misconduct between 2013 and 2016." This argument simply ignores the substantial amount of evidence the government presented to the members. For BCNR to find the BOI's decision arbitrary and capricious for lack of evidence, Applicant would need to demonstrate that the decision was too implausible due to a failure to consider important aspects of a problem, or ran counter to evidence. <u>See Motor Vehicle Mfrs. Ass'n</u>, 463 U.S. at 43. In this case, to prove the allegations, the government presented numerous exhibits including NCIS reports of investigation, the Article 32 Preliminary Hearing Officer (PHO) report, the victim's education records, and a videos of the victim's forensic interview. Reference (a), p. 104. Applicant cannot credibly argue there was

18

no corroborating evidence when he did not provide or discuss any of these exhibits in his petition.

h. The government also called live witnesses to support its case: the child forensic interviewer who interviewed the victim, Applicant's ex-wife, and the victim herself. In his petition, Applicant challenges the victim's credibility by noting supposed inconsistencies in her allegations; for example, by noting that the victim "alleged that [Applicant's ex-wife] was in the house when she was assaulted but [Applicant's ex-wife] or no one else heard anything." Crucially, however, Applicant's civilian counsel had an opportunity to cross examine the victim, in the presence of the members, and elected to ask zero questions. Reference (a), p. 149. BCNR should be skeptical of Applicant's credibility arguments when his counsel had an opportunity to confront the victim with these issues but declined to do so.

i. Applicant also argues the board [Board of Inquiry] failed to consider evidence of the victim's "oversexualization." However, the record directly contradicts this assertion. The members clearly considered the issue of Applicant's [sic] sexualization. For example, one member stated "I would like to understand where [the victim's knowledge of these terms] came from because we're dealing with an individual that either experienced these or heard these terms. It is important to me to understand whether she heard these terms or whether she experienced these terms." Id. at 261.

j. In response, the Respondent testified as follows: 'When we adopted her, she was already sexualized and we knew this. She engaged in sexual exploration of herself when she was much younger, and so much so to the fact [that] . . . a family friend caught [the victim] watching pornography on the computer.' Reference (a), p. 265.

k. Additionally, the record indicates the legal advisor made a preliminary ruling on the admissibility of certain evidence of the Victim's sexual history. Reference (a), p. 260–65. However, Applicant has not provided any documentation to indicate what evidence was considered, what arguments were made, or the legal advisor's ruling. BCNR cannot reliably determine whether the omission of any sexual evidence was erroneous without reviewing the details of this ruling. Accordingly, Applicant failed to meet his burden to provide evidence of a material error, and BCNR should decline to find error.

(emphasis and omission in original; third and fourth alterations added).

Finally, the Advisory Opinion stated that the "interests of justice do not support overturning plaintiff's retirement grade determination." The Advisory Opinion stated that "Applicant's arguments regarding the credibility of the Victim's allegations are unconvincing for the same reasons discussed above. Given the serious nature of the

19

misconduct substantiated by the BOI, justice and equity do not support overturning Applicant's retirement grade determination."

Plaintiff received the Advisory Opinion on November 27, 2022 and on December 26, 2022, plaintiff submitted his response to the Advisory Opinion. In his response, plaintiff contended:

LtCol (ret) Sparks (USMCR) should be granted immediate relief in this case because of the fundamental errors and injustices present in his application. They include: (1) being separated with an OTH [Other Than Honorable] characterization of service after 35 years of honorable service based on an isolated false allegation made by his adopted daughter who has a history of making false allegations, (2) no physical, no DNA, no digital, no medical, no witness accounts, and no any other evidence to support her meritless allegation, (3) the adopted daughter's motive was to avoid moving from her room during divorce proceedings and after she was allowed to stay in her room, she maintained normal communications with LtCol (ret) Sparks, (4) Deputy Commonwealth's Attorney for Fairfax County, Virginia declined prosecution, and (5) USMC dismissed its charges against LtCol (ret) Sparks and did not initiate NJP [nonjudicial punishment] because it could not establish personal jurisdiction.

Additional due process violations concern: (1) the BOI not being composed of at least one USMCR officer, (2) the BOI not being composed of at least one African American officer, and (3) the BOI failing to explain how it connected the facts of this case to its recommendation. This application is timely because only in 2020 LtCol (ret) Sparks learned that the Secretary of the Navy made a final decision in his case, and in August 2022, LtCol (ret) Sparks received his certificate of discharge.

(alterations added). Plaintiff also asserted that "the "advisory opinion is arbitrary, capricious and contrary to the evidence because it omits key facts in its analysis and based on this, its analysis is unreliable and incomplete." Plaintiff alleged:

The advisory opinion also fails to meaningfully address the facts that AS had a history of making false allegations of sexual abuse, molested LtCol (ret) Sparks's son, was seriously oversexualized and addicted to pornography, listed herself on a dating website, and acted as if she never made the allegation after she was told that she would not have to move out of her room. **(BCNR Application, Exhibits 2, 3)** (detailing communications with the adoption agency discussing how AS made allegation against her mother's boyfriend, there was no evidence, and her mother did not support her) It also ignores the allegation that after the allegation and during the alleged time, AS never told anyone about it – including her therapist – there was no evidence, and she acted as if she never made the allegation later on. **(BCNR Application, exhibits 7, 8, 20, 22, 24)** (spent father's day with him in 2016, continued to send messages to him that she loved him, LtCol

20

(ret) Sparks was asked to support her while she attended the VA Challenge Academy, and she sent him regular text messages, and asked him for money)

(emphasis in original). Plaintiff requested to appear in person before the BCNR, but the BCNR determined a personal appearance was not necessary and considered plaintiff's case based on the evidence in the record before the BCNR.

On February 24, 2023, the BCNR issued its decision on plaintiff's application. In its decision, the BCNR identified the materials it had considered in making its decision:

Documentary material considered by the Board consisted of your application, together with all material submitted in support thereof, relevant portions of your naval record and applicable statutes, regulations and policies, as well as the 22 November 2022 Advisory Opinion (AO) provided to the Board by Headquarters Marine Corps Military Personnel Law Branch (JPL), and your rebuttal statement dated 26 December 2022.

The BCNR explained:

The Board [the BCNR], however, substantially concurred with the AO [Advisory Opinion] and determined the retirement grade determination was not erroneous or unjust. Specifically, the Board [the BCNR] noted the Deputy Commandant, Manpower and Reserve Affairs (DC (M&RA)) found that, because your conduct occurred as a Lieutenant Colonel, the last grade at which you satisfactorily served honorably was Major. Further, the Board [the BCNR] noted that the BOI substantiated that you committed, among other offenses, rape by force of a child that had attained the age of 12 and your retirement in grade, as a Lieutenant Colonel, was unwarranted.

The Board [the BCNR] also determined there was insufficient evidence to support your contention the BOI was improperly convened. Specifically, the Board [the BCNR] noted you did not provide convincing evidence that one of the BOI members was anything other than a member of the Selected Marine Corps Reserve, rather, you "made no argument, provided no evidence, and did not demonstrate why, if there was an error, the error was material or unjust." The Board [the BCNR] also substantially concurred with the AO and determined your argument that you were denied due process and fair treatment because the BOI lacked a minority member lacked merit and supporting evidence.

Further, the Board [the BCNR] concurred with the AO's determination that the BOI findings were not arbitrary and capricious but were supported by substantial evidence presented by the Government, to include live witnesses (the child forensic interviewer, your ex-wife, and your adopted daughter) which your counsel had the opportunity to cross-examine. Additionally, the Board [the BCNR] substantially concurred with the AO's

21

determination that your contention the BOI failed to consider evidence of your adopted daughter's oversexualization is clearly contradicted by the record, specifically the portions of the BOI transcript provided by you. The Board [the BCNR] noted the standard for civilian and criminal courts is "beyond a reasonable doubt" whereas the BOI, which is an administrative action, applies the "preponderance of the evidence" standard and concluded your contention, that the fact the civilian and criminal courts did not pursue the charges should have a bearing on the Board's [the BCNR's] decision, lacks merit. Further, considering your contention regarding personal jurisdiction, the Board [the BCNR] specifically noted the issue of personal jurisdiction was discussed, but not argued against, by your civilian counsel at the BOI and determined there is insufficient evidence to support your contention.

After a thorough review and consideration of your contentions, as discussed above, the Board [the BCNR] concluded there was insufficient evidence to support your contentions regarding errors in the BOI constitution or violations of due process. Additionally, although one might consider it a "best practice" for the BOI to include a minority member, the Board [the BCNR] determined it was not error or unjust for a minority member to not be a BOI member and, noting your civilian counsel did not object to the lack of a minority member, concluded the BOI was properly convened. With regard to your contention the BOI's findings were arbitrary and capricious, the Board [the BCNR] noted there is no legal requirement for the BOI to "explain what facts and evidence it considered to support its findings and recommendations." Regardless, based on the record, the Board [the BCNR] found the BOI findings to be supported by a preponderance of the evidence.

The Board [the BCNR], in carefully considering your contentions regarding the BOI's findings, specifically noted the BOI considered each individual allegation of misconduct and did not substantiate all the alleged misconduct. Further, the Board [the BCNR] determined there is insufficient evidence of an error or injustice to "remove the entitlement" of presumption of regularity, and determined there was insufficient evidence to warrant "second guessing" the BOI's findings and recommendations. Specifically, the Board [the BCNR] noted the BOI "had the facts in front of them," had the ability to hear and see the critical witnesses, and had sufficient evidence to determine credibility and conclude the allegations of misconduct were substantiated. Based on the above, the Board [the BCNR] concluded there is insufficient evidence of a material error or injustice warranting your requested relief.

(alterations added).

Thereafter, plaintiff filed a complaint in this court seeking review of the BCNR's decision. Plaintiff's complaint includes six counts. In Count I, plaintiff contends that the Board of Inquiry was improperly composed, in violation of SECNAVINST 1920.6C,

22

because "none of the officers were Reserve officers." In Count II, plaintiff contends that "Defendant failed to show how it had jurisdiction over Plaintiff" during the Board of Inquiry proceeding, in violation of SECNAVINST 1920.6C. In Count III, plaintiff contends that SECNAVINST 1920.6C was violated when the Board of Inquiry "substantiated some grounds of separation that exceeded the 5-year limitation" (which, plaintiff argues[21] indicates "that officers who [are] being processed for separation misconduct shall not be separated for conduct identified more than 5 years prior to the initiation of processing for separation") (alteration added). In Count IV, plaintiff argues that SECNAVINST 1920.6C was violated because the Board of Inquiry, in making its "recommendation as to the grade in which an officer last served satisfactorily," did not consider factors such as "the nature and severity of the misconduct, the misconduct and its relation to, and effect on, the performance, all fitness reports, time in grade and relation between such time and the time of misconduct, chain of command recommendations, and other relevant matters." In Count V, plaintiff alleges that defendant violated 10 U.S.C. § 1370 when plaintiff's retirement rank was reduced to Major (Pay Grade O-4) and "[i]n August 2022, Plaintiff was retired and received pay in the retired rank of Major, pay grade O-4." (alteration added). In Count VI, plaintiff contends that the BCNR's decision was arbitrary and capricious. Plaintiff also states that "the BCNR failed to meaningfully and adequately address the arguments and to consider the evidence," including the "numerous due process violations concerning his elimination proceedings and retired paygrade of Major." The alleged due process violations were "improper composition of the board of inquiry, lack of corroborating evidence, consideration of matters from over 5 years before, lack of fairness due to no minority officer, and no evidence of jurisdiction between September 1, 2013 and June 30, 2016." In his complaint in this court, plaintiff requests the following relief:

> (1) that the judgment be entered against Defendant to the maximum amount allowed by law based on the claims asserted in this complaint,
> (2) that the BCNR's decision docket number 6534-22 be set aside,
> (3) that the board of inquiry's findings and recommendations be set aside,

---

[21] SECNAVINST 1920.6C Enclosure 4, paragraph 11.e, states:

> Performance or conduct identified more than 5 years prior to the initiation of processing for separation under paragraph 3 of this enclosure shall not form the basis for processing under this enclosure. Performance or conduct is deemed to have been "identified" when it is reported to the respective Service's Show Cause Authority. "Initiation of processing" is deemed to have occurred when officers are officially notified of administrative separation processing by the respective Service's Show Cause Authority.

SECNAVINST 1920.6C, Enclosure 4, ¶ 11.e (Aug. 26, 2015). At oral argument in this court, plaintiff backed off of the claim of a five year violation and plaintiff's counsel stated, "concerning the Count 3, which is the five year, we concede that, yes, there was a delay, so they did consider matters from the time when they were notified. However, we believe that the characterization of service is collateral and incident of and a military pay claim."

23

(4) that Plaintiff's records be corrected to show that he received retired pay in the amount he would have been entitled to had he been properly retired in the grade of Lieutenant Colonel,

(5) that Plaintiff's military records be corrected to show that he was retired in the paygrade of Lieutenant Colonel for retirement purposes,

(6) that all other records inconsistent with the requested relief be corrected,

(7) that Plaintiff's earned legal fees and costs expended in pursuit of this complaint be reimbursed, and

(8) All other relief this Honorable Court deems proper.

Subsequently, plaintiff filed a motion for judgment on the Administrative Record Pursuant to the Rules of the United States Court of Federal Claims (RCFC) 52.1(c) (2024) and in response, defendant filed a cross-motion for judgment on the Administrative Record. The parties' cross-motions for judgment on the Administrative Record have been fully briefed. Oral argument was held, after which the parties filed supplemental briefs.

## DISCUSSION

As indicated above, the parties have cross-moved for judgment on the Administrative Record. RCFC 52.1(c)(1) governs motions for judgment on the Administrative Record. The court's inquiry is directed to "'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence of record.'" Harmonia Holdings Grp., LLC v. United States, 20 F.4th 759, 766 (Fed. Cir. 2021) (quoting XOtech, LLC v. United States, 950 F.3d 1376, 1379–80 (Fed. Cir. 2020)); see also Pac. Eng'g Inc. v. United States, 178 Fed. Cl. 666, 677 (2025); TISTA Sci. & Tech. Corp. v. United States, 177 Fed. Cl. 600, 615 (2025); Assessment & Training Sols. Consulting Corp. v. United States, 173 Fed. Cl. 123, 127 (2024); Stahl v. United States, 167 Fed. Cl. 657, 680 (2023); Henrikson v. United States, 162 Fed. Cl. 594, 607 (2022); Raj v. United States, 158 Fed. Cl. 569, 571 (2022); Valles-Prieto v. United States, 159 Fed. Cl. 611, 616 (2022) (quoting A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006)); Superior Optical Labs, Inc. v. United States, 150 Fed. Cl. 681, 691 (2020) (citing DMS All-Star Joint Venture v. United States, 90 Fed. Cl. 653, 661 (2010)); AAR Manufacturing, Inc. v. United States, 149 Fed. Cl. 514, 522 (2020); Glocoms, Inc. v. United States, 149 Fed. Cl. 725, 731 (2020); Centerra Grp., LLC v. United States, 138 Fed. Cl. 407, 412 (2018) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356–57 (Fed. Cir. 2005)); Informatics Applications Grp., Inc. v. United States, 132 Fed. Cl. 519, 524 (2017) (citation omitted); Strategic Bus. Sols., Inc. v. United States, 129 Fed. Cl. 621, 627 (2016), aff'd, 711 F. App'x 651 (Fed. Cir. 2018); Mgmt. & Training Corp. v. United States, 115 Fed. Cl. 26, 40 (2014) (quoting A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126 at 131). The process is "designed to provide for trial on a paper record, allowing fact-finding by the trial court." Bannum, Inc. v. United States, 404 F.3d at 1356; see also Raj v. United States, 158 Fed. Cl. at 571; Vectrus Sys. Corp. v. United States, 154 Fed. Cl. 29, 40 (2021); Jordan Pond Co., LLC v. United States, 115 Fed. Cl. 623, 630 (2014).

The court reviews the February 24, 2023 BCNR decision as to whether the decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. See Chappell v. Wallace, 462 U.S. 296, 303 (1983) ("Board decisions are subject to

24

judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence"). The Court of Appeals for the Federal Circuit has written, "we will not disturb the decision of the Board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Prestonback v. United States, 965 F.3d 1363, 1368 (Fed. Cir. 2020) (citing Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing Haselrig v. United States, 333 F.3d 1354, 1355 (Fed. Cir. 2003))); see also Doyon v. United States, 58 F.4th 1235, 1242 (Fed. Cir. 2023) ("[A] court may only set aside the BCNR's decision if it was 'arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law'" (alteration added) (quoting Fisher v. United States, 402 F.3d 1167, 1180 (Fed. Cir. 2005))); Baude v. United States, 955 F.3d 1290, 1298 (Fed. Cir. 2020); Barnick v. United States, 591 F.3d 1372, 1377 (Fed. Cir. 2010); Lewis v. United States, 458 F.3d 1372, 1376 (Fed. Cir. 2006) (citing Martinez v. United States, 333 F.3d 1295, 1314 (Fed. Cir. 2003)), reh'g en banc denied (Fed. Cir. 2006), cert. denied, 552 U.S. 810 (2007) (stating that this court reviews the AFBCMR decision "to determine whether it is arbitrary, capricious, unsupported by substantial evidence, or contrary to law"); Metz v. United States, 466 F.3d 991, 998 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006); Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 528 U.S. 809 (1999); Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983); Skinner v. United States, 219 Ct. Cl. 322, 332, 594 F.2d 824, 830 (1979); Henrikson v. United States, 162 Fed. Cl. at 607 ("As noted, the scope of review of the decision of a military correction board is a narrow and deferential one. The Court is '"limited to determining whether a decision of the Correction Board is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations."'" (quoting Melendez Camilo v. United States, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting Heisig v. United States, 719 F.2d at 1156))); Osburn v. United States, 171 Fed. Cl. 38, 44 (2024), aff'd, No. 2024-2025, 2025 WL 3719434 (Fed. Cir. Dec. 23, 2025); Okuda v. United States, 160 Fed. Cl. 549, 559 (2022); Ward v. United States, 133 Fed. Cl. 418, 427 (2017); Joslyn v. United States, 110 Fed. Cl. 372, 389 (2013); Meidl v. United States, 108 Fed. Cl. 570, 575 (2013). This standard of review is narrow. "The court does not sit as a 'super correction board.'" King v. United States, 149 Fed. Cl. 272, 275 (2020) (quoting Skinner v. United States, 219 Ct. Cl. at 331, 594 F.2d at 829). Moreover, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." Dodson v. United States, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (citing Arens v. United States, 969 F.2d 1034, 1037 (Fed. Cir. 1992) (citing Sanders v. United States, 219 Ct. Cl. 285, 302, 594 F.2d 804 (1979) (citing Brenner v. United States, 202 Ct. Cl. 678, 686 (1973), cert. denied, 419 U.S. 831 (1974) (discussing judicial deference to military decisions regarding promotions)))); Stahl v. United States, 167 Fed. Cl. at 674.

In Verbeck v. United States, a Judge of this court stated:

The court's review in these matters is thus limited in scope and deferential in nature. Ms. Verbeck must show that the Board's decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence. See Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005)[, cert. denied, 546 U.S. 1066 (2005)]; Godwin v. United States, 338 F.3d

25

1374, 1378 (Fed. Cir. 2003); Heisig [v. United States], 719 F.2d at 1156 . . . . . The Board's decision will comply with the substantial evidence standard so long as a "'reasonable mind might accept' [the] particular evidentiary record as 'adequate to support [the contested] conclusion.'" Dickinson v. Zurko, 527 U.S. 150, 162 (1999) (quoting Consolidated Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). Similarly, the arbitrary and capricious standard "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000)[, reh'g denied (Fed. Cir. 2000)].

In sum, the court must satisfy itself that the Board considered all of the relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it. See Heisig [v. United States], 719 F.2d at 1157 ("Under the substantial evidence rule, all of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion."); Van Cleave v. United States, 70 Fed. Cl. 674, 678–79 (2006) (While the court does not "serve as a 'super correction board[,]' Skinner v. United States, . . . correction boards must examine relevant data and articulate satisfactory explanations for their decisions.") (citations omitted). If the Board "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the [Board], or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise[,]" its decision runs afoul of even this lenient standard of review. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

Verbeck v. United States, 97 Fed. Cl. 443, 451 (2011) (alterations added; emphasis and omissions in original); see also Stahl v. United States, 167 Fed. Cl. at 667–68. As a Judge of this court in Osburn v. United States, when reviewing BCNR decision, the "Board is not required to detail its assessment of every piece of evidence in the record, nor resemble 'a model of analytic precision to survive a challenge.'" Osburn v. United States, 171 Fed. Cl. at 45 (quoting Dickson v. Sec'y of Def., 68 F.3d 1396, 1404 (D.C. Cir. 1995)). "For the motion for judgment on the administrative record, plaintiff bears the burden to prove through the administrative record the Board's decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence." Stahl v. United States, 167 Fed. Cl. at 673 (citing Chambers v. United States, 417 F.3d at 1227); see also Arens v. United States, 969 F.2d at 1037.

Personal Jurisdiction During Administrative Separation Proceedings

In plaintiff's motion for judgment on the Administrative Record, plaintiff contends there was no personal jurisdiction over plaintiff with respect to his administrative separation proceedings. Plaintiff argues that, because "there was no evidence that he was placed on active duty orders" and, thus, "subject to the UCMJ between September 1, 2013 and June 30, 2016" when the alleged misconduct occurred, "the grounds for

separation indicating that he violated multiple UCMJ Articles were improper." Defendant responds that "the BCNR rationally determined that there was insufficient evidence to support Major Sparks' personal jurisdiction claim."

With respect to plaintiff's "contention regarding personal jurisdiction," in the BCNR's decision, "the Board [the BCNR] specifically noted the issue of personal jurisdiction was discussed, but not argued against, by your civilian counsel at the BOI and determined there is insufficient evidence to support your contention." (alteration added). Plaintiff's civilian counsel mentioned personal jurisdiction in his opening statement at the Board of Inquiry, however, he only did so in the context of recounting the procedural history of plaintiff's case through the military's courts-martial system. Specifically, plaintiff's civilian counsel's statement at the Board of Inquiry that there was "jurisdiction on some of those charges"[22] to try plaintiff by court-martial, and the civilian counsel's statement that the charges against plaintiff that were referred to a court-martial were dismissed, are not evidence that there was no jurisdiction to consider plaintiff for involuntary retirement and a reduction in retirement pay grade at an administrative proceeding, including the Board of Inquiry. Defendant argues that plaintiff "failed to demonstrate that the board of inquiry's findings of violations of the UCMJ were based on misconduct that occurred when he was not on active duty, and, thus, he has failed to demonstrate that there was sufficient evidence [sic] support his personal jurisdiction argument." (alteration added). The court notes that, at the Board of Inquiry, plaintiff did not introduce any motions challenging the Board of Inquiry's personal jurisdiction over plaintiff. Plaintiff made no objections to the worksheet on which the Board of Inquiry members would record their findings and recommendations, and which listed all of the reasons for which plaintiff was being considered for involuntary retirement. Plaintiff did not "submit a letter of deficiency citing personal jurisdiction as an issue" or a "statement in rebuttal to the findings and recommendations of the BOI for consideration by the Secretary of the Navy" after the Board of Inquiry issued its recommendations.

Plaintiff first raised the legal challenge to personal jurisdiction in his December 26, 2022 response to the Advisory Opinion submitted to the BCNR. Defendant acknowledges

---

[22] As quoted above, in his opening statement, plaintiff's civilian counsel stated plaintiff was on an Individual Mobilization Augmented billet

> in Okinawa, so General Nicholson directed an Article 32 investigation. You may be familiar with this if you've been in a court. You have some idea of this. Colonel Jim Bartolotto, senior Marine Corps judge advocate, smart guy, was given most of what you have minus the SRB stuff, essentially. He - - I will tell you he recommended trial, and he identified that there were some jurisdictional issues, but one of his recommendations was very solid. There is jurisdiction over some of these charges just not all of them. I'm not going to - - I'm going to try to avoid lawyering you on this because this issue is about your status when you are a reserve officer whether you are on orders, IMA, ADT, whatever. Okay. So I just want to make that clear is - - he, in fact, determined there would be jurisdiction on some of those charges.

that in plaintiff's response to the Advisory Opinion, plaintiff wrote "'[i]f there was no jurisdiction over [Major] Sparks to proceed with a court-martial, then it is unclear how personal jurisdiction was acquired through other independent grounds to proceed with a' board of inquiry." (alterations in original). Defendant argues, however, that "[t]his conclusory argument does not demonstrate that Major Sparks was not subject to the UCMJ during the period when he sexually abused his daughter, i.e., September 1, 2013, through June 30, 2016. See AR 414–17."[23] (emphasis in original; alteration added). In plaintiff's response to the Advisory Opinion, he did not offer any evidence that the Board of Inquiry lacked personal jurisdiction over him; he only highlighted that charges which had been referred to a court-martial were dismissed. In his response to the Advisory Opinion, plaintiff also did not reference any facts, statutes, regulations, or cases that would support his contention that the Board of Inquiry did not have personal jurisdiction over him. In the absence of evidence in the record before the BCNR to support plaintiff's allegations, the BCNR rationally concluded that there was "insufficient evidence to support your contention" regarding personal jurisdiction at the Board of Inquiry.

Regarding the relevant factual allegations, plaintiff argues that "Plaintiff was a civilian or drilling in Japan or New Orleans for the vast majority of the time in question between September 1, 2013 and June 30, 2016," and that during this time, "his wife, two sons, and the daughter were in Virginia." Defendant responds:

> Major Sparks erroneously suggests that he could not have sexually abused his daughter while on active duty because he was activated to active duty in Japan or New Orleans during this period, while his family lived in Virginia. See ECF No. 11 at 9, 17. That Major Sparks' [sic] performed active duty in Japan and New Orleans does not mean that he was physically separated from his daughter during the entire period that he was on active duty; rather, Major Sparks took leave during his active duty and returned to Virginia to visit his family. See AR 235–38.

---

[23] Defendant also states:

> [T]he record reflects that Major Sparks was on active duty for more than 300 days during this period. See id. [AR] at 459 (Career Retirement Credit Record indicating 268 active duty days between March 25, 2014, through March 24, 2015, and 28 active duty days between March 25, 2015, through March 24, 2016), 752 (DD Form 214 reflecting active duty starting on April 16, 2016, and extending beyond June 30, 2016.)

(footnote omitted; alterations added).

(emphasis in original; alteration added).[24] Defendant also argues "as a matter of law, officers in the Marine Corps Reserve may be separated through boards of inquiry for misconduct that occurs while they are not subject to the UCMJ." Defendant states:

> Under SECNAVINST 1920.6C, Marine Corps officers "who do not maintain required standards of performance or professional or *personal* conduct may be processed for separation for cause." Encl. 3, ¶ 1 (emphasis added) One basis for separation for cause was "Misconduct, or Moral, or Professional Dereliction[,]" which means "[p]erformance *or personal* or professional conduct . . . which is unbecoming an officer as evidenced by" certain reasons, such as: 1) "[c]ommission of a military *or civilian offense* which could be punished by confinement of 6 months or more and any other misconduct which would require specific intent for conviction"; and 2) "[s]exual perversion." Id. at Encl. 3, ¶ 1(b); see also DoDI 1332.30 ¶ 3.2 ("A commissioned officer may be separated from a Military Service . . . when found to have committed an act or acts of misconduct or moral or professional dereliction, which include (but are not limited to): a. Serious or recurring misconduct, punishable by military or civilian authorities.") (italics added, underline omitted). "Commission of a military or civilian offense" and "[s]exual perversion" were the reasons for *Major Sparks'* separation proceedings. AR 414, 417.
>
> A Reserve officer does not need to be on active duty or otherwise subject to the UCMJ in order to engage in "personal . . . conduct . . . which is unbecoming an officer," a "civilian offense which could be punished by confinement of 6 months or more," or "[s]exual perversion." SECNAVINST 1920.6C Encl. 3, ¶ 1(b) (emphasis added).

(footnote omitted, alterations, omissions, and all emphasis in original). Therefore, defendant argues:

> Major Sparks provides no reason to believe that his heinous actions would be considered any less perverted or any less of "an extreme departure from conduct required of Marine Corps officers" (AR 404) if they were committed while he was not on active duty. In other words, there is no reason to believe that Major Sparks would have been retired as a Lieutenant Colonel if he was not on active duty or otherwise subject to the UCMJ at the time he sexually abused his daughter.

---

[24] The court notes that in the part of the transcript of the Board of Inquiry to which defendant cites, AR 235–38, plaintiff testifies about when he traveled between Japan and Virginia in 2016.This section of the transcript of the Board of Inquiry, however, does not address the time plaintiff was in New Orleans in 2014 and 2015. Plaintiff discusses his travels between New Orleans and Virginia in another part of the transcript.

In response, plaintiff reiterates his argument that he was not subject to the UCMJ and, therefore, it was improper to separate him "for '[c]omission of a military or civilian offense that, if prosecuted under the UCMJ, could be punished by confinement of six months or more, of [sic] if prosecuted under the UCMJ, would require specific intent for conviction.' AR 700." (first alteration in original, italics omitted).

Plaintiff cites to Brezler v. Mills, 86 F. Supp. 3d 208 (E.D.N.Y. 2015) to support his argument that the Board of Inquiry lacked personal jurisdiction over him. Plaintiff argues:

> In Brezler v. Mills, 86 F. Supp. 3d 208, 213 (2015), a Reserve major sent classified information to a fellow Marine deployed in Afghanistan via unsecured channels. Pursuant to SECNAVINST 1920.6C, the Navy convened a BOI to determine whether he violated military regulations governing classified material. This approach suggests that the Navy did not charge him with violating the UCMJ and it did not convene a BOI to determine if he committed an offense, if prosecuted under the UCMJ, could be punished by confinement of six months or more.

Plaintiff claims that "[t]he actions of the Marine Corps in Brezler suggested that unlike in our case, in Brezler, the Marine Corps recognized the prohibition against applying the UCMJ jurisdiction to civilians and drilling Reservists – and could still properly process the BOI proceedings." (alteration added). The court notes that the issue in Brezler plaintiff was seeking "a preliminary injunction prohibiting the Marine Corps from either acting upon the separation recommendation or proceeding any further in the disciplinary process. In the alternative, [the Brezler] plaintiff seeks an injunction compelling the Navy to provide an accurate transcript of the initial disciplinary hearing." Brezler v. Mills, 86 F. Supp. 3d at 211 (alteration added). Additionally, the issue of personal jurisdiction was not addressed in Brezler. Instead, the Brezler court determined that "the BOI proceeding is not a 'final agency action' of the type that is subject to judicial review under the APA [Administrative Procedure Act]. Accordingly, this Court lacks jurisdiction to review the BOI report under the APA." Brezler v. Mills, 86 F. Supp. 3d at 217 (alteration added). The Brezler court also determined that "with respect to any attempt to bring a due process claim outside the confines of the APA framework, plaintiff has adequate avenues for relief before administrative tribunals, which may obviate the need for federal judicial intervention. Such claims are, therefore, unexhausted and unripe," and "[w]ith respect to any First Amendment retaliation claim . . . no such separate claim is contained in the complaint." Brezler v. Mills, 86 F. Supp. 3d at 220 (alteration and omission added).

Further, plaintiff's reliance on Brezler appears to be based on an incorrect understanding of the facts in Brezler, which were decidedly different from the factual bases of the administrative proceedings against plaintiff. According to the Report of the Board of Inquiry in Mr. Brezler's case, Mr. Brezler was alleged to have violated, and his Board of Inquiry found, that he did violate, UCMJ Articles 92, 133, and 134.[25] See Ex. 1

---

[25] The Report of the Board of Inquiry in the case of Major Brezler noted:

30

The purpose of the BOI was to recommend whether the respondent should be retained in the U.S. Marine Corps. The board considered these specific reasons for separation:

a. Substandard performance of duty as evidenced by failure to demonstrate acceptable leadership qualities and discharge duties required and expected of an officer of his grade and experience; and

b. The commission of a military or civilian offense that, if prosecuted under the UCMJ, could be punished by confinement of 6 months or more.

The Report of the Board of Inquiry noted the following acts alleged:

The specific acts supporting the above bases include that Major Brezler was alleged to have violated Article 92, violation of a lawful order or regulation, in that he failed to obey a lawful general regulation, to wit: Section 4.l(d) of Executive order 13526, dated 29 December 2009, by wrongfully removing from official premises electronic documents and files classified as "Secret" without proper authorization; Article 92, violation of a lawful order or regulation, in that he failed to obey a lawful general regulation, to wit: Chapter 7 and paragraph 10-3.l.b. of SecNav-M 5510.36, dated 30 June 2006, made punitive by SecNav 5510.36a, dated 6 October 2006, by wrongfully failing to safeguard and to properly store electronic documents and files classified as "Secret"; Article 92, dereliction of duty, in that he was derelict in the performance of his duties as a Civil Affairs officer and/or Headquarters and Security Battalion Company Commander by willfully failing to properly safeguard and secure electronic documents, files, and materials properly classified; Article 133, conduct unbecoming an officer and gentlemen, in that Major Brezler, disregarded classified information handling protocols by improperly storing electronic documents, files, and materials properly classified on a personal (non-secure) laptop computer and personal (non-secure) external/portable storage device by wrongfully removing from official premises electronic documents and files classified as the "Secret" without proper authorization, by failing to report that the same had been illegally removed, by storing said personal laptop computer and external/portable storage device with electronic documents properly classified in his home, and/or by emailing a classified document from his unsecured personal e-mail account to three recipients, two of which were unsecured personal email addresses, which conduct was unbecoming an officer and a gentlemen; Article 134, general article, in that he violated Title 18 of the U.S. Code, Section 1924(a), a crime or offense not capital, while having access to classified electronic materials due to his position, did, knowingly remove such documents without authority and with the intent to retain such documents at an unauthorized location, to wit: his residence; and Article 134, general article, in that he violated Title 18 of the U.S. Code,

to Decl. of Kevin Carroll, ECF No. 6–1 at 3–4, Brezler v. Mills et al., No. 2:14–cv–07424 (E.D.N.Y. 2014). The Brezler case also does not support plaintiff's argument that the government cannot list violations of UCMJ Articles as describing the acts supporting the involuntary separation of reservists in administrative separation proceedings, including in plaintiff's case, so long as there is an independent investigation and findings, such as issued in plaintiff's Board of Inquiry. Finally, the court notes that the Brezler decision was a decision by the United States District Court for the Eastern District of New York and is not binding on this court, as a decision by the United States Supreme Court or a decision by the United States Court of Appeals for the Federal Circuit would be binding on this court.

Plaintiff also cites to United States v. Morita, 74 M.J. 116 (C.A.A.F. 2015) and Willenbring v. United States, 559 F.3d 225 (4th Cir. 2009) to support his argument that the Board of Inquiry did not have personal jurisdiction over plaintiff. Plaintiff argues "service members who are not on active duty are not subject to the UCMJ" and the "United States Marine Corps failed to produce any evidence to show that at the time of the alleged misconduct, between September 1, 2013 and June 30, 2016, Plaintiff served with the United States Armed Forces on active duty." Plaintiff alleges that "[i]n United States v. Morita, 74 M.J. 116, 117 (2015), the United States Court of Appeals for the Armed Forces explained that there was no jurisdiction over a reservist who committed an offense not in a military status," and claims that "[i]n Willenbring v. United States, 559 F.3d 225, 228 ([4th Cir.] 2009), the United States Court of Appeals for the Fourth Circuit explained that a military trial court possesses court-martial jurisdiction over an Army reservist only when the alleged offense was committed while the servicemember was 'on active duty' or 'on inactive-duty training.'" (alterations added). Defendant correctly explains, however, that Morita and Willenbring "are inapposite because they involved court-martial proceedings, not administrative separation proceedings." In addition, plaintiff cites to United States ex rel. Toth v. Quarles, 350 U.S. 11 (1955) and Wickham v. Hall, 12 M.J. 145 (C.M.A. 1981) to bolster his claim that the Board of Inquiry lacked personal jurisdiction over him. Plaintiff argues

> Because of the sensitivity of constitutional and statutory concerns related to exercising courts-martial jurisdiction over civilians – whether in criminal or

Section 793(f), a crime or offense not capital, while having access and control of classified electronic materials dealing with national security due to his position, did, through gross negligence permit the classified materials to be removed from its proper place of custody or delivered to anyone in violation of his trust, or to be lost, stolen, abstracted, or destroyed; or by having knowledge that the same had been illegally removed ultimately to his private residence from its proper place of custody or abstracted and failed to make prompt report of such loss, theft, abstraction, or destruction to his superior officer.

The Report of the Board of Inquiry in the Brezler case, under "Findings," noted: "The Board found that a preponderance of the evidence did prove substandard performance of duty and misconduct; Violation of Article 92x2, 133, and 134."

administrative proceedings – the elimination and retirement in the reduced rank should be set aside in this case. United States ex rel. Toth v. Quarles, 350 U.S. 11, 100 L. Ed. 8, 76 S. Ct. 1 (1955); Wickham v. Hall, 12 M.J. 145 (C[.]M[.]A[.] 1981).

(alterations added). The decisions of United States ex rel. Toth and Wickham describe concerns with applying court-martial jurisdiction to "civilian ex-soldiers who had severed all relationship with the military and its institutions." United States ex rel. Toth v. Quarles, 350 U.S. at 14 (footnote omitted); see also Wickham v. Hall, 12 M.J. at 148–50. As explained above, the government was not "exercising courts-martial jurisdiction" over plaintiff Sparks, rather the government was exercising its jurisdiction to consider and process plaintiff for involuntary retirement from the military through administrative proceedings. Plaintiff was a non-retired reservist until his involuntary retirement was approved by the Assistant Secretary of the Navy for Manpower and Reserve Affairs, and plaintiff's administrative separation proceedings were held to determine whether plaintiff should remain in the Navy or if non-voluntary retirement from the Marine Corps for misconduct was more appropriate, and if retired, at what rank, paygrade, and characterization of service plaintiff should be retired. Plaintiff's administrative proceedings were not an adjunction of "the guilt or innocence of people charged with offenses for which they can be deprived of their life, liberty or property." United States ex rel. Toth v. Quarles, 350 U.S. at 17; see also Manual for Courts-Martial, United States (2016 Ed.), Chapter X, R.C.M. 1003, pp. II-132 to II-136; SECNAVINST 1920.6C, ¶ 4; Enclosure 3, ¶¶ 1, 1.b.; Enclosure 4, ¶ 12 (Aug. 26, 2015). Furthermore, with the exception of United States ex rel. Toth v. Quarles, which is a decision by the United States Supreme Court, none of the cases cited by plaintiff could be used as precedent for this court.

Regarding plaintiff's case in this court, SECNAVINST 1920.6C, paragraph 4.a. states: "The policies, reasons for separation, and provisions for characterization of service set forth in this instruction apply to all officers and warrant officers of the Regular and Reserve components of the Navy and Marine Corps." SECNAVINST 1920.6C ¶ 4.a. (Aug. 26, 2015). Under SECNAVINST 1920.6C, Enclosure 3 (titled "Policy Governing Involuntary Separation"), paragraph 1 (titled "Separation for Cause"), "Officers who do not maintain required standards of performance or professional or personal conduct may be processed for separation for cause per this instruction when there is reason to believe that one or more of the following circumstances exist." SECNAVINST 1920.6C, Enclosure 3, ¶ 1 (Aug. 26, 2015). The circumstance under SECNAVINST 1920.6C, Enclosure 3, paragraph 1 for which plaintiff was involuntarily retired was "Misconduct and Moral or Professional Dereliction." "Misconduct, or Moral, or Professional Dereliction" is "[p]erformance or personal or professional conduct (including unfitness on the part of a warrant officer) which is unbecoming an officer as evidenced by one or more of the following reasons[.]" SECNAVINST 1920.6C, Enclosure 3, ¶ 1.b. (Aug. 26, 2015) (alterations added). According to SECNAVINST 1920.6C, the specific reasons that "evidenced" plaintiff's "performance or personal or professional conduct . . . which [was] unbecoming an officer" were: "(1) Commission of a military or civilian offense which could be punished by confinement of 6 months or more and any other misconduct which would require specific intent for conviction[,]" and "(3) Sexual perversion." SECNAVINST

1920.6C, Enclosure 3, ¶¶ 1.b.(1), (3) (Aug. 26, 2015) (alterations and omission added).[26] The applicable paragraphs from Enclosure 3 ("Policy Governing Involuntary Separation"), Enclosure 4 ("Guidelines on Separations for Cause"), Enclosure 5 ("Guidelines on Characterization of Service"), Enclosure 6 ("Guidelines on Recommendations – Grade at Retirement") and Enclosure 8 ("Board of Inquiry (BOI) Procedures") governed plaintiff's administrative separation proceedings because plaintiff was a commissioned officer being separated for cause, specifically, "Misconduct, or Moral, or Professional Dereliction," who was eligible for retirement. See SECNAVINST 1920.6C, Enclosures 3–6, 8 (Aug. 26, 2015). SECNAVINST 1920.6C does not require that plaintiff had to be subject to court-martial jurisdiction under the UCMJ in order for plaintiff to be required to show cause for retention at a Board of Inquiry for his "Misconduct, or Moral, or Professional Dereliction," or for the Board of Inquiry to have issued a recommendation about whether plaintiff should be involuntarily retired for "Misconduct, or Moral, or Professional Dereliction." Nor does SECNAVINST 1920.6C require that plaintiff had to be subject to court-martial jurisdiction under the UCMJ for the Board of Inquiry to have made a recommendation as to whether plaintiff should be retired at a lower pay grade or have his characterization of service changed. See SECNAVINST 1920.6C, ¶ 4.a., Enclosures 3–6, 8 (Aug. 26, 2015). Therefore, plaintiff has not demonstrated that the Board of Inquiry did not have jurisdiction over plaintiff to investigate and issue its findings and recommendations, or that the Navy did not have jurisdiction, through the Assistant Secretary of the Navy for Manpower and Reserve Affairs (acting on behalf of the Secretary of the Navy) to involuntary retire plaintiff at a reduced pay grade and characterize plaintiff's service as Other Than Honorable. See SECNAVINST 1920.6C ¶¶ 4.a., 13.a. (Aug. 26, 2015).

Plaintiff contends, referring to the violations of UCMJ Articles to describe the reasons for involuntarily separating an officer in the documents in administrative proceedings, such as a Board of Inquiry as in plaintiff's case, is equivalent to "exercising courts-martial jurisdiction" over plaintiff. Plaintiff, however, was not separated from the Marine Corps as a result of a court-martial. The Marine Corps listed UCMJ Articles in the Report of the Board of Inquiry to offer descriptions of the factual bases that constituted the "Misconduct, or Moral, or Professional Dereliction" for which plaintiff was being considered for involuntary separation. The Board of Inquiry, however, reviewed the specific allegations and facts in plaintiff's case and recommended to the Assistant Secretary of the Navy for Manpower and Reserve Affairs plaintiff's involuntary retirement with a reduced pay grade, because a preponderance of the evidence in the record before the Board of Inquiry supported the Board of Inquiry's conclusion that plaintiff had committed the acts described in the Board of Inquiry's findings, not as a result of a court-martial proceeding. Moreover, the Assistant Secretary of the Navy for Manpower and Reserve Affairs, acting on behalf of the Secretary of the Navy, approved the recommendation from the Board of Inquiry for involuntary retirement with a reduced pay grade, and not as a result of a court-martial. Because the Navy had jurisdiction under

_____

[26] The court notes that SECNAVINST 1920.6C, Enclosure 3, ¶¶ 1.b.(2), does not apply to plaintiff's case. SECNAVINST 1920.6C, Enclosure 3, ¶¶ 1.b.(2) states: "Unlawful drug involvement. Processing for separation is mandatory. Exception to mandatory processing may be made on a case-by-case basis by SECNAV." Id.

SECNAVINST 1920.6C to separate plaintiff for "Misconduct, or Moral, or Professional Dereliction," his involuntary retirement and the reduction of his pay grade was proper, regardless of whether in certain documents in the Board of Inquiry's proceedings and findings plaintiff's misconduct was described in terms of UCMJ Article violations. Although certainly not the best practice for the purpose of clarity, describing plaintiff's misconduct in terms of UCMJ Article violations in a non-UCMJ proceeding does not invalidate the conclusions of the Board of Inquiry or the ultimate decision by the Assistant Secretary of the Navy for Manpower and Reserve Affairs to approve plaintiff's involuntary retirement with a reduced pay grade and a characterization of service as Other than Honorable. Furthermore, SECNAVINST 1920.6C makes clear that the procedures for administrative proceedings do not apply to courts-martial. See SECNAVINST 1920.6C ¶ 4(b) ("This instruction does not apply to discharge or dismissal by reason of court-martial sentence.").

At oral argument, plaintiff also argued that he had not received sufficient notice regarding his administrative separation proceedings in violation of SECNAVINST 1920.6C. Plaintiff, however, waived plaintiff's argument about insufficient notice in violation of SECNAVINST 1920.6C, Enclosure 7, because plaintiff did not raise this objection at the Board of Inquiry, nor did he raise this issue to the BCNR. See Parks v. United States, 127 Fed. Cl. 677, 680 (2016) ("When a plaintiff seeks relief from a military corrections board and later brings suit in court, any argument not previously raised before the corrections board is waived." (citing Metz v. United States, 466 F.3d at 998; and Doyle v. United States, 220 Ct. Cl. 285, 599 F.2d at 1000)). Even if this argument had not been waived, the Administrative Record reflects that plaintiff was aware of the factual bases for which he was being considered for involuntary separation. The Commanding General, III Marine Expeditionary Force's October 29, 2018 letter, notified plaintiff about the Board of Inquiry, and stated that "I [the Deputy Commandant for Manpower and Reserve Affairs] have reviewed the allegations in reference (c), and have determined that there is sufficient information to refer this case to a Board of Inquiry." (alteration added). Reference (c), to which the letter referred, is the Commanding General, III Marine Expeditionary Force's June 8, 2018 Report of Misconduct. The June 8, 2018 Report of Misconduct in which the Deputy Commandant for Manpower and Reserve Affairs requested that the Deputy Commandant for Manpower and Reserve Affairs

> exercise your authority as the Show Cause Authority for the Marine Corps and direct that:
>
> a. A Board of Inquiry (BOI) be convened to recommend whether Lieutenant Colonel Sparks should be involuntarily retired from the Marine Corps for misconduct (including those military offenses contained in enclosure (5), Article 133, UCMJ, and any other qualifying military offense you deem appropriate) and moral dereliction; and,
>
> b. The BOI be authorized to make a characterization of service recommendation, with the least favorable characterization of service being Under Other Than Honorable Conditions, if involuntary retirement is recommended by the board.

35

In the June 8, 2018 Report of Misconduct the Deputy Commandant for Manpower and Reserve Affairs issued, the Report of Misconduct specifically described the factual bases underlying the request for Board of Inquiry, as follows:

> On 6 July 2016, Miss ARS reported to her mother that her father, Lieutenant Colonel Sparks, had been touching her inappropriately and performing oral sex on her for over a year and a half. Miss ARS informed her mother that the last attempted act occurred in June 2016 while Lieutenant Colonel Sparks was home on leave from Japan, where he was serving a period of active duty.

In addition, the Report of Misconduct stated:

> On 21 July, 2016, the child [AS] submitted to a forensic interview. At the interview, Miss ARS reported that Lieutenant Colonel Sparks touched her breasts and vagina, digitally penetrated her vagina, licked her vagina, and placed Miss ARS's hand on her father's penis on multiple occasions. The child was between 12 and 15 years of age during the period of abuse.

(alteration added). Further, plaintiff acknowledged receipt of the Report of Misconduct on June 8, 2018, and stated: "I hereby acknowledge that I received reference (a) [The June 8, 2018 Report of Misconduct] on 8 June, 2018 (date) and that I have 10 calendar days to submit either a response or written indication that I have no matters to submit." (alteration added). Therefore, the court finds that plaintiff was on notice of the factual bases for the decision to convene a Board of Inquiry to consider plaintiff for involuntary separation, as a result of the receipt of the Report of Misconduct on June 8, 2018. See Enriquez v. United States, 174 Fed. Cl. 327, 354–55 (2025) (finding that "it was not prejudicial to plaintiff" when "plaintiff did not receive the show cause notification" for his Board of Inquiry "due to an administrative error," because "the record supports plaintiff was aware of the specific allegations against him," as the plaintiff had previously "received multiple documents in connection with the investigation" that detailed the facts underlying the Navy's decision to require the plaintiff to show cause for retention at a Board of Inquiry). The court, therefore, concludes that the BCNR's rejection of plaintiff's argument that the Board of Inquiry lacked personal jurisdiction over him during his administrative separation proceedings for failure to sufficiently notify him of the grounds for the administrative proceedings was not contrary to law.

BCNR's Alleged Failure to Consider All the Evidence

In addition to arguing the military did not have personal jurisdiction over plaintiff, plaintiff makes a number of arguments that the BCNR decision was arbitrary and capricious. In plaintiff's motion for judgment on the Administrative Record, plaintiff, asserts that: "the BCNR violated its mandate under 10 U.S.C. § 1552 because it ignored injustices and errors identified in the record and it failed to rationally connect the facts to its decision." Plaintiff suggests the BCNR sustained "the allegations against him without any corroborating evidence." Plaintiff also contends that the BCNR's decision was arbitrary and capricious because neither the Board of Inquiry nor the BCNR considered

all of the evidence that plaintiff offered to challenge AS's credibility, support plaintiff's credibility, and support plaintiff's contention that there was not sufficient evidence to corroborate the allegations of misconduct. Defendant responds that the "BCNR rationally concluded that board of inquiry's findings were not arbitrary and capricious and were supported by substantial evidence."

Specifically, plaintiff argues that the Board of Inquiry "failed to meaningfully address witness accounts explaining that Plaintiff was a good father who did not engage in any questionable behavior." According to plaintiff, evidence demonstrates "that the daughter engaged in questionable behavior and was not credible. AR 62, 95-102, 125-126," citing the exhibits plaintiff submitted with his application to the BCNR including email correspondence between himself and the adoption agency through which the Sparks family adopted AS, which details an incident in which AS "engaged in inappropriate sexual behavior with our [the Sparks'] seven-year old son" DS; eight declarations from "individuals who visited the house, babysat AS, and otherwise interacted with her and other family members" and a declaration from plaintiff's eldest son, Korben Sparks as well as excerpts from the transcript of plaintiff's Board of Inquiry. (alteration added). Plaintiff further alleges that the Board of Inquiry "also failed to meaningfully address that Plaintiff's characterization of service should be changed based on the numerous errors and injustices." Moreover, plaintiff contends he provided to the BCNR "additional information that after the allegation, his daughter continued to contact him as if she never made the allegation." Plaintiff argues that not explicitly addressing all of the items of evidence makes the BCNR's decision arbitrary and capricious, because it indicates that "the BCNR failed to adequately address plaintiff's arguments and evidence" and "fail[ed] to properly review the records and grant relief based on the errors and injustices" raised by plaintiff. (alteration added). Plaintiff argues "because the BCNR failed to meaningfully address Plaintiff's arguments – the proper remedy is to remand it back to the BCNR."

As described above, on September 24, 2018, the Deputy Commandant for Manpower and Reserve Affairs directed the Commanding General, III Marine Expeditionary Force, to convene a

> Board of Inquiry (BOI) for a recommendation as to whether Lieutenant Colonel Sparks should be involuntarily retired from the Marine Corps and, if retirement is recommended, whether Lieutenant Colonel Sparks should be retired in his current grade or a lesser grade, as well as a recommendation as to characterization of service, with the least favorable characterization being Under Other Than Honorable Conditions. . . . The specific reasons for separation to be considered by the Board [Board of Inquiry] are misconduct and moral dereliction as evidenced by the following:
>
> misconduct and moral dereliction as evidenced by the following:
>
> a. Commission of a military offense which could be punished by confinement of six months or more, or any other misconduct which would require specific intent for conviction—specifically, Articles 80 (Attempt to commit rape of a child who has attained the age of 12 years old), 120b

37

(Rape by force of a child who has attained the age of 12 years old), and 133 (Conduct unbecoming an officer), UCMJ.

      b. Sexual perversion.

(alteration and omission added). The alleged commission of a military offense which could be punished by confinement of six months or more or sexual perversion, which the Board of Inquiry considered were:

a. Violations of Article 80, UCMJ.

      (1) Specification 1: [Attempt to Commit Rape by force of a child who has attained the age of 12, 120b(a) (2)] Between on or about 1 June 2016 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks attempted to commit sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by attempting to use force against Ms. ARS to penetrate her mouth and vulva with a part of his body, with the intent to arouse and gratify his own sexual desire.

      (2) Specification 2: [Attempt to Commit Sexual Assault of a child who has attained the age of 12 involving penetration of vulva or anus or mouth by any part of the body or any object, 120b(b)] Between on or about 1 June 2016 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks attempted to commit sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by attempting to penetrate her mouth and vulva with a part of his body, with the intent to arouse and gratify his own sexual desire.

      (3) Specification 3: [Attempt to Commit Sexual Abuse of a child by sexual contact involving the touching of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, 120b(c)] Between on or about 1 June 2016 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks attempted to commit sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by attempting to touch Ms. ARS's breasts and genitalia, with the intent [sic] arouse and gratify his own sexual desire.

b. Violations of Article 120b, UCMJ.

      (1) Specification 1: [Rape by force of a child who has attained the age of 12, 120b(a) (2)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by using force against Ms. ARS to penetrate her vulva with his finger, with the intent [sic] arouse and gratify his own sexual desire.

(2) Specification 2: [Rape by force or [sic] child who has attained the age of 12, 120b(a) (2)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by using force against Ms. ARS to penetrate her vulva with his tongue, with the intent [sic] arouse and gratify his own sexual desire.

(3) Specification 3: [Rape by force or [sic] child who has attained the age of 12, 120b(a) (2)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by using force against Ms. ARS to penetrate her mouth with his finger, with the intent [sic] arouse and gratify his own sexual desire.

(4) Specification 4: [Sexual assault of a child who has attained the age of 12 involving penetration of vulva or anus or mouth by any part of the body or any object, 120b(b)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by penetrating Ms. ARS's vulva with his fingers, with an intent to arouse and gratify his own sexual desire.

(5) Specification 5: [Sexual assault of a child who has attained the age of 12 involving penetration of vulva or anus or mouth by any part of the body or any object, 120b(b)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by penetrating Ms. ARS's vulva with his tongue, with an intent to arouse and gratify his own sexual desire.

(6) Specification 6: [Sexual assault of a child who has attained the age of 12 involving penetration of vulva or anus or mouth by any part of the body or any object, 120b(b)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed sexual acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by penetrating Ms. ARS's mouth with his fingers, with an intent to arouse and gratify his own sexual desire.

(7) Specification 7: [Sexual abuse of a child by sexual contact involving the touching of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, 120b(c)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville,

VA, U.S. Marine LtCol Daniel Sparks committed lewd acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by intentionally and directly touching Ms. ARS's breasts and genitalia, with an [sic] intent to arouse and gratify his own sexual desire.

(8) Specification 8: [Sexual abuse of a child by sexual contact involving the touching of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, 120b(c)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA. U.S. Marine LtCol Daniel Sparks committed lewd acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by intentionally causing Ms. ARS to directly touch his penis, with an intent to arouse and gratify his own sexual desire.

(9) Specification 9: [Sexual abuse of a child by sexual contact involving the touching of any body part, 120b(c)] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks committed lewd acts upon Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, by intentionally kissing, hugging, and grinding on Ms. ARS, with an intent to arouse and gratify his own sexual desire.

c. A violation of Article 133, UCMJ. Specification: [Conduct unbecoming an officer and a gentleman] On divers occasion between on or about 1 September 2013 and on or about 30 June 2016, at or near Centerville, VA, U.S. Marine LtCol Daniel Sparks sexually abused his adopted daughter, Ms. ARS, a child who had attained the age of 12, but had not attained the age of 16, and that, under the circumstances, these acts constituted conduct unbecoming an officer and a gentleman.

(alterations in original, except for [sic]).

After deliberating on December 20, 2018, the Senior Board Member of the Board of Inquiry announced the findings and recommendations of the Board of Inquiry:

The Board [Board of Inquiry] found that a preponderance of the evidence proved the acts alleged in violation of Article 120b Specifications 1, 2, 3, 7, 8, and 9, and in violation of Article 133, UCMJ. The Board [Board of Inquiry] found that the acts alleged in violation of Article 80, and the acts alleged in violation of Article 120b Specifications 4, 5, and 6, were not substantiated. In light of these findings, the Board [Board of Inquiry] found that both specific reasons for separation, detailed in paragraph 4 above, were supported by the evidence.

(alterations added). "The Board [Board of Inquiry] recommended that the respondent be retired in the lesser grade of Major/O-4" and "that the respondent's service be characterized as Other Than Honorable." (alteration added).

40

As noted above, after plaintiff submitted his application to the BCNR in August 2022, on November 22, 2022, at the BCNR's request, the Head of the Marine Corps Military Personnel Law Branch provided an Advisory Opinion to the BCNR on plaintiff's application, with the opinion that plaintiff's "request should be denied." The Advisory Opinion explained:

g. <u>The BOI's findings were not arbitrary and capricious.</u> Applicant next argues the BOI's findings were arbitrary and capricious because "there is no evidence to corroborate the allegations of misconduct between 2013 and 2016." This argument simply ignores the substantial amount of evidence the government presented to the members. For BCNR to find the BOI's decision arbitrary and capricious for lack of evidence, Applicant would need to demonstrate that the decision was too implausible due to a failure to consider important aspects of a problem, or ran counter to evidence. <u>See Motor Vehicle Mfrs. Ass'n</u>, 463 U.S. at 43. In this case, to prove the allegations, the government presented numerous exhibits including NCIS reports of investigation, the Article 32 Preliminary Hearing Officer (PHO) report, the victim's education records, and a videos of the victim's forensic interview. Reference (a), p. 104. Applicant cannot credibly argue there was no corroborating evidence when he did not provide or discuss any of these exhibits in his petition.

h. The government also called live witnesses to support its case: the child forensic interviewer who interviewed the victim, Applicant's ex-wife, and the victim herself. In his petition, Applicant challenges the victim's credibility by noting supposed inconsistencies in her allegations; for example, by noting that the victim "alleged that [Applicant's ex-wife] was in the house when she was assaulted but [Applicant's ex-wife] or no one else heard anything." Crucially, however, Applicant's civilian counsel had an opportunity to cross examine the victim, in the presence of the members, and elected to ask <u>zero</u> questions. Reference (a), p. 149. BCNR should be skeptical of Applicant's credibility arguments when his counsel had an opportunity to confront the victim with these issues but declined to do so.

(alterations and emphasis in original). Addressing plaintiff's concern that the Board of Inquiry had not considered all the evidence, the Advisory Opinion stated:

i. Applicant also argues the board [Board of Inquiry] failed to consider evidence of the victim's "oversexualization." However, the record directly contradicts this assertion. The members clearly considered the issue of Applicant's sexualization. For example, one member states "I would like to understand where [the victim's knowledge of these terms] came from because we're dealing with an individual that either experienced these or

41

heard these terms. It is important to me to understand whether she heard these terms or whether she experienced these terms." Id. at 261.[27]

j. In response, the Respondent testified as follows: "When we adopted her, she was already sexualized and we knew this. She engaged in sexual exploration of herself when she was much younger, and so much so to the fact [that] . . . a family friend caught [the victim] watching pornography on the computer." Reference (a), p. 265.[28]

k. Additionally, the record indicates the legal advisor made a preliminary ruling on the admissibility of certain evidence of the Victim's sexual history. Reference (a), p. 260–65. However, Applicant has not provided any documentation to indicate what evidence was considered, what arguments were made, or the legal advisor's ruling. BCNR cannot reliably determine whether the omission of any sexual evidence was erroneous without reviewing the details of this ruling. Accordingly, Applicant failed to meet his burden to provide evidence of a material error, and BCNR should decline to find error.

(second, fourth, and fifth alterations and omission in original; footnotes added).

---

[27] The full quote from the transcript of the Board of Inquiry proceedings stated:

> But we're saying that Colonel Sparks has actually done this to his daughter. I'm just trying to get an understanding from where these – where this would come from. I mean that is what I would like to get. I would like to understand where this came from because we're dealing with an individual that either experienced these or heard these terms. It is important to me to understand whether she heard these terms or whether she experienced these terms. That helps me understand where we're going to go with this board of inquiry. If you deny me that, right, you're really narrowing the whole scope of what we're trying to do within this board of inquiry.

[28] Plaintiff's full quote from the transcript of the Board of Inquiry proceedings stated:

> My daughter watched pornography on her device and on the computer. When we adopted her, she was already sexualized and we knew this. She engaged in sexual exploration of herself when she was much younger, and so much so to the fact I don't know if it's in the book right now, but a family friend caught A. S. Watching pornography on the computer and made a statement that was in with the 32, sir.

The reference to the 32 appears to be a reference to the Article 32 Preliminary Hearing Officer (PHO) report.

The BCNR decision stated

the Board [Board of Inquiry] concurred with the AO's determination that the BOI findings were not arbitrary and capricious but were supported by substantial evidence presented by the Government, to include live witnesses (the child forensic interviewer, your ex-wife, and your adopted daughter) which your counsel had the opportunity to cross-examine. Additionally, the Board [Board of Inquiry] substantially concurred with the AO's determination that your contention the BOI failed to consider evidence of your adopted daughter's oversexualization is clearly contradicted by the record, specifically the portions of the BOI transcript provided by you.

(alterations added). The BCNR also concluded: "The Board [Board of Inquiry], in carefully considering your contentions regarding the BOI's findings, specifically noted the BOI considered each individual allegation of misconduct and did not substantiate all the alleged misconduct." (alteration added).[29]

In defendant's cross-motion for judgment on the Administrative Record, defendant argues that "[t]he BCNR rationally concluded that [sic] board of inquiry's findings were not arbitrary and capricious and were supported by substantial evidence." (alterations added). Referencing the BCNR's decision, defendant argues:

The BCNR explained that the board of inquiry "findings were not arbitrary and capricious but were supported by substantial evidence presented by the Government, to include live witnesses (the child forensic interviewer, [Major Sparks'] ex-wife, and [his] adopted daughter) which [his] counsel had the opportunity to cross-examine." AR 2. Also, although Major Sparks alleged that Fairfax County declined to criminally prosecute him due to a lack of corroborating evidence, id. at 2, the BCNR reasonably gave no

---

[29] As referenced above, the findings and recommendations of the Board of Inquiry were:

The Board [Board of Inquiry] found that a preponderance of the evidence proved the acts alleged in violation of Article 120b Specifications 1, 2, 3, 7, 8, and 9, and in violation of Article 133, UCMJ. The Board [Board of Inquiry] found that the acts alleged in violation of Article 80, and the acts alleged in violation of Article 120b Specifications 4, 5, and 6, were not substantiated. In light of these findings, the Board [Board of Inquiry] found that both specific reasons for separation, detailed in paragraph 4 above, were supported by the evidence.

(alterations added). As described above, Specification 4 addressed the allegation of plaintiff Sparks "penetrating Ms. ARS's vulva with his fingers, with an intent to arouse and gratify his own sexual desire," Specification 5 addressed the allegation plaintiff "penetrating Ms. ARS's vulva with his tongue, with an intent to arouse and gratify his own sexual desire," and Specification 6 addressed the allegation plaintiff "penetrating Ms. ARS's mouth with his fingers, with an intent to arouse and gratify his own sexual desire."

43

weight to "the fact the civilian and criminal courts did not pursue the charges" because "the standard for the civilian and criminal courts is 'beyond a reasonable doubt' whereas the [board of inquiry], which is an administrative action, applies the 'preponderance of the evidence' standard." Id. at 3; see also SECNAVINST 1920.6C Encl. 8, ¶ 11(a).

(alterations in original).

To uphold a military correction board's decision, "the court must satisfy itself that the Board considered all of the relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it." Verbeck v. United States, 97 Fed. Cl. at 451 (citing Heisig v. United States, 719 F.2d at 1157; Van Cleave v. United States, 70 Fed. Cl. at 678–79); see also Melendez Camilo v. United States, 642 F.3d at 1044; Stahl v. United States, 167 Fed. Cl. 657, 668 (2023). Moreover:

> If the Board "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the [Board], or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise[,]" its decision runs afoul of even this lenient standard of review.

Verbeck v. United States, 97 Fed. Cl. at 451 (alteration in original) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). In addition:

> If the Board "[does] not disclose[ ] its reasons for . . . ignoring" or "disregard[ing] certain record evidence" and the Court is "unable to discern why," remand is appropriate. Id. [Hatmaker v. United States, 127 Fed. Cl. 217, 237 (2016)]. See also Fuentes, 157 Fed. Cl. at 463 (finding decision arbitrary and capricious when it relied on an advisory opinion that "evaluated only certain of [a] plaintiff's medical records during his service").

McCadney v. United States, 175 Fed. Cl. 165, 178 (2025) (alterations and omission, except for addition of Hatmaker citation, in original). A military correction board "is not required to detail its assessment of every piece of evidence in the record, nor resemble 'a model of analytic precision to survive a challenge.'" Osburn v. United States, 171 Fed. Cl. at 45 (quoting Dickson v. Sec'y of Def., 68 F.3d at 1404). "[A]n administrative board's or trial court's failure to mention specific evidence does not mean . . . that it failed to consider that evidence." Melendez Camilo v. United States, 642 F.3d at 1045 (citing FMC Corp. v. Hennessy Indus., Inc., 836 F.2d 521, 524 (Fed. Cir. 1987)) (alteration and omission added); see also Bader v. United States, 160 Fed. Cl. at 545–46 (holding that the Air Force Board for Correction of Military Records did not ignore evidence and that its decision was not arbitrary or capricious, even though the Board and the advisory opinion did not specifically discuss a letter submitted by the plaintiff in his reconsideration application).

The BCNR stated in its decision on plaintiff's application that the "[d]ocumentary material considered by the Board [the BCNR] consisted of your application, together with all material submitted in support thereof." (alterations added). See Melendez Camilo v. United States, 642 F.3d at 1045; Bader v. United States, 160 Fed. Cl. at 545–46. In plaintiff's case, the BCNR did not specifically discuss in its decision all the declarations, the emails, and the text messages included with plaintiff's BCNR application, however, does not necessarily lead to the conclusion that the BCNR "entirely failed to consider an important aspect of the problem" or that the BCNR "offered an explanation for its decision that runs counter to the evidence." See Verbeck v. United States, 97 Fed. Cl. at 451 (explaining that a military correction board's decision is arbitrary and capricious if "the Board 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the [Board], or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise'" (alteration in original)) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43). Many of the exhibits plaintiff Sparks included with his application speak to the issue of the credibility of the witnesses at the Board of Inquiry, including AS, Tracy Sparks, and plaintiff, and to the issue of the evidentiary sufficiency underlying the Board of Inquiry's findings and recommendations. The BCNR decision and the Advisory Opinion both discussed the issues of credibility and evidentiary sufficiency of the Board of Inquiry's findings and recommendations. As quoted above, the BCNR's decision stated that

> the Board [the BCNR] concurred with the AO's determination that the BOI findings were not arbitrary and capricious but were supported by substantial evidence presented by the Government, to include live witnesses (the child forensic interviewer, your ex-wife, and your adopted daughter) which your counsel had the opportunity to cross-examine. Additionally, the Board [the BCNR] substantially concurred with the AO's determination that your contention the BOI failed to consider evidence of your adopted daughter's oversexualization is clearly contradicted by the record, specifically the portions of the BOI transcript provided by you.

(alterations added). The BCNR's decision also stated:

> [T]he Board [the BCNR] determined there is insufficient evidence of an error or injustice to "remove the entitlement" of presumption of regularity, and determined there was insufficient evidence to warrant "second guessing" the BOI's findings and recommendations. Specifically, the Board [the BCNR] noted the BOI "had the facts in front of them," had the ability to hear and see the critical witnesses, and had sufficient evidence to determine credibility and conclude the allegations of misconduct were substantiated.

(alterations added).

Furthermore, the court reviews the February 24, 2023 BCNR decision as to whether the decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. See Chappell v. Wallace, 462 U.S. at 303; Prestonback v. United States,

45

965 F.3d at 1368. "The court does not sit as a 'super correction board.'" King v. United States, 149 Fed. Cl. at 275 (2020) (quoting Skinner v. United States, 219 Ct. Cl. at 331, 594 F.2d at 829). The Administrative Record does not support plaintiff's argument that the BCNR did not review plaintiff's submissions or ignored important aspects of the issues presented in plaintiff's arguments, did not consider the credibility of the witnesses at the Board of Inquiry, or the evidentiary sufficiency of the Board of Inquiry's findings and recommendations, even though the BCNR did not specifically reference all of the exhibits plaintiff submitted to the BCNR. See Verbeck v. United States, 97 Fed. Cl. at 451; see also Melendez Camilo v. United States, 642 F.3d at 1045; Bader v. United States, 160 Fed. Cl. at 545–46.

Separately, plaintiff argues that the facts that "Deputy Commonwealth's Attorney for Fairfax Country [in Virginia] declined to prosecute" plaintiff, and that the Marine Corps withdrew the charges that were referred to a court-martial, are evidence that AS "was not credible" and that her allegations "lacked any evidentiary support." (alteration added). Defendant responds that

> although Major Sparks alleged that Fairfax County declined to criminally prosecute him due to a lack of corroborating evidence, id. at 2 [AR p. 2], the BCNR reasonably gave no weight to "the fact the civilian and criminal courts did not pursue the charges" because "the standard for the civilian and criminal courts is 'beyond a reasonable doubt' whereas the [board of inquiry], which is an administrative action, applies the 'preponderance of the evidence' standard." Id. at 3; see also SECNAVINST 1920.6C Encl. 8, ¶ 11(a).

(second alteration in original).

In its decision, the BCNR explained:

> The Board [of Inquiry] noted the standard for the civilian and criminal courts is "beyond a reasonable doubt" whereas the BOI, which is an administrative action, applies the "preponderance of the evidence" standard and concluded your contention, that the fact the civilian and criminal courts did not pursue the charges should have a bearing on the Board [of Inquiry]'s decision, lacks merit.

(alterations added). Plaintiff does not elaborate on his assertions that the fact the Deputy Commonwealth Attorney of Fairfax County declined to pursue the charges demonstrates that AS' allegations "lacked any evidentiary support." As indicated above, the Advisory Opinion and the BCNR both discussed the issues of credibility and evidentiary sufficiency of the Board of Inquiry's findings and recommendations. This court does not find it arbitrary or capricious that the BCNR did not agree with plaintiff that the lack of criminal prosecution demonstrated that AS' allegations against plaintiff were not credible.

46

Alleged Improper Determination of Characterization of Service

In plaintiff's motion for judgment on the Administrative Record, plaintiff states:

Secretary of the Navy Instruction 1920.6C, Enclosure 5, states that conduct in the civilian community of a Reserve component who are not on active duty or active duty for training may form the basis of characterization as under other than honorable conditions only if such conduct affected directly the performance of the members' military duties.

Plaintiff continues:

Conduct of a Reserve officer not on orders may be considered for characterization of service when there is evidence that such conduct affected the performance of military duties. However, any such conduct does not automatically result in violating UCMJ Articles when a Reserve officers [sic] is not on active duty orders and therefore not subject to the UCMJ. In our case, Defendant did not introduce any evidence that the alleged conduct between 2013 and 2016 adversely affected the performance of military duties or that Plaintiff was on active duty orders.

(alteration added).

Plaintiff further contends in his motion for judgment on the Administrative Record that his characterization of service should be set aside because the Board of Inquiry's determination of his characterization of service was improper.[30] Plaintiff states that SECNAVINST 1920.6C, Enclosure 5, paragraph 2.d.(3) "explains that conduct in the civilian community of members on a Reserve component who are not on active duty or active duty for training may form the basis for an other than honorable characterization of service only if such conduct affects directly the performance of the members' military duties." Plaintiff, therefore, argues "there was no evidence of any direct impact on Plaintiff's performance in 2018," and "that the alleged conduct in question that purportedly occurred over a period of 3 years (2013-2016) occurred when he was largely in non-drilling or civilian status, and it should not have been considered when determining his characterization of service." (emphasis added). Plaintiff argues that the BCNR's alleged failure "to meaningfully address Plaintiff's arguments," including the argument about the

---

[30] As explained by the United States Court of Appeals for the Federal Circuit:

"Characterization of service" is a term of art that appears on military discharge paperwork and that reflects the circumstances of a veteran's separation from military service—i.e., "Honorable," "General (Under Honorable Conditions)," and "Under Other Than Honorable Conditions." See Dep't of Defense (DoD) Instruction 1332.14 at Encl. 4, ¶ 3(b)(2).

Doyon v. United States, 58 F.4th 1235, 1238 (Fed. Cir. 2023).

47

improper determination of his characterization of service, should result in a remand to the BCNR because "[i]n <u>Gann v. Del Toro</u>, [No. 20–3198,] 2021 U.S. Dist. LEXIS 243662, [*]13 ([D.D.C. Dec. 21,] 2021), the United States District Court for the District Court of Columbia explained that while the BCNR acknowledged plaintiff's arguments, merely recognizing them without addressing them is still an error." (alterations added). Plaintiff argues that the "BOI[31] also failed to meaningfully address that plaintiff's characterization of service should be changed based on the numerous errors and injustices. AR 15–22, 36–400." (footnote added).

Defendant responds that "[a]lthough Major Sparks was represented by counsel at the BCNR, he did not allege to the BCNR that his Under Other Than Honorable Conditions characterization of service violated SECNAVINST 1920.6C, Enclosure 5, paragraph 2(d)(3). <u>See</u> AR 15–22, 36–57." (alteration added). Defendant also argues that "in his BCNR application, Major Sparks did not specifically request that the BCNR alter his characterization of service. <u>See id.</u> [AR] at 41." (alteration added). Therefore, defendant, citing <u>Metz v. United States</u>, 466 F.3d at 998, argues that plaintiff forfeited this argument because the "BCNR cannot be faulted for not addressing an alleged legal error that Major Sparks did not raise at the BCNR." Defendant also argues that plaintiff's position regarding the determination of his characterization of service is "irrelevant to this case" because "Major Sparks is not challenging his characterization of service as Under Other than Honorable Conditions in this Court. Major Sparks is instead challenging his retirement grade determination." (internal references omitted). Defendant also argues that "this Court lacks jurisdiction to entertain independent challenges to the characterization of a plaintiff's military service."

SECNAVINST 1920.6C, Enclosure 5, paragraph 2.d.(3) states:

Conduct in the civilian community of members of a Reserve component who are not on active duty or active duty for training may form the basis for characterization as Under Other Than Honorable Conditions only if such conduct affects directly the performance of the members' military duties. Such conduct may form the basis for characterization as General (Under Honorable Conditions) only if such conduct has an adverse impact on the overall effectiveness of the Naval Service, including military morale and efficiency. If a member tests positive for the presence of illegal drugs in the member's body while in an active or inactive duty status, the drug abuse shall be deemed to have affected directly the member's readiness and performance of military duties.

SECNAVINST 1920.6C, Enclosure 5, ¶ 2.d.(3) (Aug. 26, 2015).

---

31 Although plaintiff states "BOI" in his submission to this court, the court believes that plaintiff may have meant to reference the BCNR, because plaintiff cites to his application to the BCNR and his response to the Advisory Opinion.

The Commanding General, III Marine Expeditionary Force's October 29, 2018 letter notified plaintiff of the Board of Inquiry proceedings and stated:

> If the Board [of Inquiry] finds that one or more of the reasons for retirement are supported by sufficient evidence to warrant retirement, it may recommend your retirement and make an additional recommendation as whether you should be retired in your current grade or a lesser grade, as well as a recommendation as to characterization of service, with the least favorable characterization being Under Other Than Honorable Conditions.

(alteration added). Plaintiff acknowledged receipt of Commanding General, III Marine Expeditionary Force's October 29, 2018 letter on November 13, 2018, in advance of the Board of Inquiry proceeding. In addition, at the beginning of the Board of Inquiry, the Senior Member of the Board of Inquiry stated if the Board of Inquiry "recommends retirement, it will also render a recommendation as to characterization of service with the least favorable being under - - under - - under other than honorable conditions." Moreover, the Recorder explained during opening statements at the Board of Inquiry that "[t]he BOI here is going to make recommendations to SECNAV [the Secretary of the Navy] as to retirement, as to retirement grade determination, as well as characterization of service." (alterations added). The Recorder also stated:

> You [the members of the Board of Inquiry] have in front of you the SECNAV Instruction 1920 [SECNAVINST 1920.6C]. That is your - - that is your guiding reference throughout this proceeding. If there are questions, Enclosure 8 is going to be BOI procedures. Enclosure 5 is going to discuss characterization of service, and you can refer to that.

(alterations added). As noted above, plaintiff made no objections during the Board of Inquiry about the characterization of service that could be recommended by the Board of Inquiry. Additionally, plaintiff's then civilian counsel did not bring any motions before opening statements at the Board of Inquiry and plaintiff's civilian counsel did not make any objections to the worksheet on which the Senior Member of the Board of Inquiry would later record the findings and recommendations of the Board of Inquiry. The worksheet listed three possible recommendations for plaintiff's characterization of service from which the Board of Inquiry could choose, if the Board of Inquiry found that plaintiff should be involuntarily retired in a grade lower than his current grade: Honorable, General (Under Honorable Conditions), and Other Than Honorable. Further, plaintiff did not contest the Board of Inquiry's recommendation of Other Than Honorable, as he did not submit a statement in response to the Report of the Board of Inquiry.

In addition, plaintiff did not raise before the BCNR an argument that the determination of his characterization of service violated SECNAVINST 1920.6C, Enclosure 5, paragraph 2.d.(3) (Aug. 26, 2015). Although plaintiff did discuss his characterization of service in his application to the BCNR and in his response to the Advisory Opinion, he did not argue that there was a procedural violation of SECNAVINST 1920.6C, Enclosure 5, paragraph 2.d.(3) underlying the Board of Inquiry's recommendation of his Under Other Than Honorable characterization of service. As

49

explained above, there appears to have been an improper characterization of service record in plaintiff's military record. As noted in the Advisory Opinion to the BCNR: "Applicant's retirement certificate contains obvious administrative errors (which inure to his benefit). He was not honorably retired as a lieutenant colonel, as the certificate states—he was retired in the lesser grade of major with an other than honorable characterization of service." In his application to the BCNR, plaintiff stated that "[i]n 2018, the Board of Inquiry recommended Lt Col (ret.) Sparks for separation with an other than honorable characterization of service, but recently he received a certificate of honorable retirement." (alteration added). In his application to the BCNR, plaintiff stated that "[d]espite all the evidence showing no misconduct and the allegations being uncorroborated, the Board of Inquiry recommended that Lt Col (ret.) Sparks be retired in the rank of Major with an other than honorable characterization of service." (alteration added). Also, in his response to the Advisory Opinion, plaintiff stated: "In his application, LtCol (ret) Sparks explained that the fundamental error and injustice is that he was separated with an OTH [Other Than Honorable characterization of service] based on a single allegation made by AS who has previously made similar false allegations." (alteration and footnote added). Although plaintiff discussed his Other Than Honorable characterization of service in the materials he submitted to the BCNR, he did not raise to the BCNR the argument that the determination of his characterization of service violated SECNAVINST 1920.6C, Enclosure 5, paragraph 2.d.(3) (Aug. 26, 2015). Therefore, by failing to raise a characterization of service argument at the Board of Inquiry and to the BCNR, plaintiff waived it and cannot raise a characterization of service argument for the first time in this court. See Parks v. United States, 127 Fed. Cl. at 680 ("When a plaintiff seeks relief from a military corrections board and later brings suit in court, any argument not previously raised before the corrections board is waived.") (citing Metz v. United States, 466 F.3d at 998; and Doyle v. United States, 220 Ct. Cl. 285, 599 F.2d at 1000).

The court notes that plaintiff also does not challenge his characterization of service in his complaint in this court. In Count V of his complaint, plaintiff states: "However, the board of inquiry recommended to eliminate Plaintiff with an other than honorable characterization of service despite no corroborating evidence, SECNAVINST 1920.6C violations, and jurisdictional issues." In Count V, plaintiff only requests relief related to his retired pay grade as a major "be set aside." Notably, plaintiff does not explicitly ask the court to set aside his characterization of service in his Motion for Judgment on the Administrative Record; the first time that plaintiff explicitly requests the court aside his characterization of service is in his reply brief filed in this court. Notably, "'[a] party's failure to raise an argument in an opening or responsive brief constitutes waiver." Superior Waste Mgmt. LLC v. United States, 169 Fed. Cl. 239, 297 (2024) (quoting Sarro & Assocs., Inc. v. United States, 152 Fed. Cl. 44, 58–59 (2021)) (alteration added); see also Big Will Trucking, LLC v. United States, 179 Fed. Cl. 54-55 (2025), recons. denied, 179 Fed. Cl. 731 (2026); McCarthy v. United States, 171 Fed. Cl. 469, 481 (2024). Because plaintiff does not challenge his characterization of service in his complaint, and because plaintiff does not request that his characterization of service be set aside as part of his requested relief in his complaint, the court does not entertain plaintiff's arguments challenging the

determination of his characterization of service. See Pearl v. United States, 111 Fed. Cl. 301, 308–09 (2013).[32]

Requirements of a Having a Reserve Officer on the Board of Inquiry

In plaintiff's motion for judgment on the Administrative Record, plaintiff argues that his Board of Inquiry was improperly composed because "one of the board members was likely not a drilling Reservist." Plaintiff argues that "Defense Instruction 1332.30, Section 4, and Secretary of the Navy Instruction 1920.6C specifically required a Reserve officer" to sit as a member of his Board of Inquiry. Plaintiff argues, however, that Colonel Maita, the member of the Board of Inquiry, who was identified as the designated Reserve officer member during the Board of Inquiry, was "not a drilling Reservist" because Colonel Maita "admitted to serving in a billet of the director of the Office of Marine Forces Reserves – which suggests that he was in Full Time Status or Active Reserve" and that he "likely did not drill twice a month in his billet." Plaintiff, therefore, contends that "the AR suggests that the director of the Office of Marine Forces Reserves was not a drilling Reservist."

In defendant's cross-motion for judgment on the Administrative Record, defendant argues that the "BCNR rationally rejected Mr. Sparks' claim that his board of inquiry lacked a Reserve officer." Defendant states:

---

[32] Plaintiff also argues, citing Voge v. United States, 844 F.2d 776, 779–81 (Fed. Cir. 1988), that if were entitled to a change in his retirement pay grade, his characterization of service should also be changed because it is "collateral to and incident of" his retirement pay grade. As explained below, the BCNR's decision to deny plaintiff's application was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence. Because plaintiff does not prevail on the merits in his challenge to the BCNR decision, he is not entitled to a money judgment, and, therefore, he also is not entitled to equitable relief. See 28 U.S.C. § 1491(a)(2) ("To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States."); Otis v. United States, 176 Fed. Cl. 1, 8 (2025) ("The United States Court of Federal Claims 'does not have general equity jurisdiction,' but, in money claims against the United States under the MPA [Military Pay Act], 'the court may issue such orders as are necessary "[t]o provide an entire remedy and to complete the relief afforded by the judgment,' including 'as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records.'" (quoting Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (quoting 28 U.S.C. § 1491(a)(2)))) (first alteration added); see also Flowers v. United States, 80 Fed. Cl. 201, 223 ("Unable to claim a money judgment against the government, plaintiff is not entitled to equitable relief."), aff'd, 321 F. App'x 928 (Fed. Cir. 2008).

51

Major Sparks is correct that Colonel Maita identified himself as "director of the Office of Marine Forces Reserves" at the Naval Support Facility in Arlington, Virginia. AR 118. But the BCNR rationally concluded that Major Sparks "did not provide convincing evidence that [Colonel Maita] was anything other than a member of the Selected Marine Corps Reserve," AR 2, "i.e., a standard drilling reservist[.]" Id. at 26. As the Head of the Headquarters Marine Corps Military Personnel Law Branch explained in her advisory opinion, "O-6 members of the [Selected Marine Corps Reserve] commonly hold director level billets." Id.

(alterations in original). Defendant contends that plaintiff, therefore, failed to meet his "burden to 'demonstrate the existence of probable material error or injustice' and overcome the 'presumption of regularity to support the official actions of public officers,' 32 C.F.R. § 723.3(e)(2)"[33] in his application to the BCNR. Defendant also argues that plaintiff's "argument fails as a matter of law because, even if Colonel Maita was on active duty when he served on Major Sparks' board of inquiry, that does not mean he ceased to be a 'Reserve officer.'"

SECNAVINST 1920.6C, Enclosure 8, paragraph 4.b, regarding membership for a Board of Inquiry, states:

In the case of Reserve commissioned officers other than warrant officers, members shall be highly qualified and experienced officers serving on active duty or in an active status in the grade of O5 or above, except that at least one member shall be in the grade of O6 or above. Each member shall be senior in grade to any officers to be considered by the board. At least one member must be a Reserve officer. This last requirement shall not apply in cases where the respondents are Reserve officers serving in their initial period of obligated service.

SECNAVINST 1920.6C, Enclosure 8, ¶ 4.b. (Aug. 26, 2015). Department of Defense Instruction 1332.30, section 4.3., states, in relevant part:

b. Composition.

(1) Each board convened will be composed of at least three commissioned officers, each with the qualifications prescribed in Paragraph 4.3.c.

(2) If the respondent is a Reserve Component officer, one or more of the voting members will be a Reserve Component officer, preferably

---

[33] Defendant does not include the date of the code edition of the Code of Federal Regulations cited in defendant's submissions to the court. The court refers to the 2022 edition, the applicable edition at the time when plaintiff submitted his application to the BCNR on August 2022 and when the BCNR issued its decision on February 24, 2023.

of the same component. This requirement cannot be waived by the respondent.

(3) The senior member will be the president of the board.

(4) A nonvoting legal advisor may also be appointed to assist the Board of Inquiry.

c. Officers Eligible to Serve on Boards.

(1) Each commissioned officer who serves on a board must be an officer on the ADL [Active Duty List[34]] or on the RASL [Reserve Active Status List[35]] of the same Military Service as the respondent.

---

[34] Section 620 of Title 10 of the United States Code provides:

(a) The Secretary of the military department concerned shall maintain a single list of all officers (other than officers described in section 641 of this title) who are on active duty for each armed force under his jurisdiction (other than the Coast Guard when it is operating as a service in the Navy).

(b) Officers shall be carried on the active-duty list of the armed force of which they are members in the order of seniority of the grade in which they are serving on active duty. Officers serving in the same grade shall be carried in the order of their rank in that grade.

(c) An officer whose position on the active-duty list results from service under a temporary appointment or in a grade held by reason of assignment to a position has, when that appointment or assignment ends, the grade and position on the active-duty list that he would have held if he had not received that appointment or assignment.

(d) Under regulations prescribed by the Secretary of the military department concerned, a reserve officer who is ordered to active duty (whether voluntarily or involuntarily) during a war or national emergency and who would otherwise be placed on the active-duty list may be excluded from that list as determined by the Secretary concerned. Exclusion of an officer from the active-duty list as the result of action by the Secretary concerned under the preceding sentence shall expire not later than 24 months after the date on which the officer enters active duty under an order to active duty covered by that sentence.

10 U.S.C. § 620 (2024).

[35] Section 14002 of Title 10 of the United States Code provides:

53

> (2) A commissioned officer may not serve on a board unless he or she is:
>
>> (a) On active duty or in an active status in a grade above major or lieutenant commander.
>>
>> (b) Senior in grade to any respondent being considered by the board.
>
>> (3) At least one member of the board will be in a grade above lieutenant colonel or commander.

Department of Defense Instruction 1332.30, § 4.3.(b)–(c)(3) (May 11, 2018) (alterations and footnotes added).

Defendant cites to multiple sections of SECNAVINST 1920.6C to support defendant's argument that active duty and active status are independent of one's status as a Reserve officer:

> SECNAVINST 1920.6C defines "[a]ctive status" as the "status of a Reserve commissioned or warrant officer who is a member of the Ready Reserve or Standby Reserve-Active, *including Reserve officers on the active duty list*." Encl. 1, ¶ 6 (italics added, underline omitted omitted). Accordingly, a "Reserve officer" can serve on "active duty" without losing his status as a "Reserve officer." See also, e.g., id. at Encl. 1, ¶ 25 ("Release from active duty. The transfer of a Reserve officer from active duty to inactive duty.") (underline omitted), Encl. 3, ¶ 2(b)(2) ("Marine Corps Reserve officers on active duty") (underline omitted), Encl. 3, ¶ 7(a) ("When determined to be in the best interest of the service, [the Secretary of the Navy] may release a Naval or Marine Corps Reserve officer from active duty").

---

(a) The Secretary of each military department shall maintain a single list, to be known as the reserve active-status list, for each armed force under the Secretary's jurisdiction. That list shall include the names of all reserve officers of that armed force who are in an active status other than those on an active-duty list described in section 620 of this title or warrant officers (including commissioned warrant officers).

(b) The reserve active-status list for the Army shall include officers in the Army Reserve and the Army National Guard of the United States. The reserve active-status list for the Air Force shall include officers in the Air Force Reserve and the Air National Guard of the United States. The Secretary of the Navy shall maintain separate lists for the Navy Reserve and the Marine Corps Reserve.

10 U.S.C. § 14002 (2024).

(alterations in original). Defendant also argues that "the BCNR rationally determined that Major Sparks failed to establish that Colonel Maita was not a member of the Selected Marine Corps Reserve, *i.e.,* a standard drilling reservist," because:

> "Active status" means the "status of a Reserve commissioned or warrant officer who is a *member of the Ready Reserve* or Standby Reserve-Active, including Reserve officers on the active duty list." SECNAVINST 1920.6C, Encl. 1, ¶ 6 (ECF No. 14-2 at 1986) (underline omitted, italics added). A member of the Selected Marine Corps Reserve is a member of the Ready Reserve. See Marine Administrative Message 303/08 ¶ 3 (May 20, 2008) ("Ready Reserve includes the following reserve categories: Selected Marine Corps Reserve (SMCR) units") (capitalization omitted).

(footnote omitted, emphasis and alterations in original). Defendant also argues "as a matter of law, even if Colonel Maita was on active duty at the time of Major Sparks' board of inquiry, he did not cease to be a 'Reserve officer' while on active duty," because defendant argues that nothing in SECNAVINST 1920.6C, Enclosure 8, paragraph 4(b) "suggests that the 'Reserve officer' may not be on 'active duty.'"

Plaintiff argues that plaintiff's Board of Inquiry was improperly composed because "[w]hile Active Reserve Marines assigned to the billet of the Director of Office of Marine Forces Reserves are in the Reserve Component, they serve on full-time active duty and do not satisfy the SECNAVINST 1920.6C requirement for a Reserve officer." (alteration added). Notably, plaintiff only argues that this evidence shows that Colonel Maita was not a "drilling reservist," but, rather, was "an Active Reserve Marine on full-time active duty." Plaintiff contends that pursuant to Department of Defense Instruction 1332.30, section 4.3. and SECNAVINST 1920.6C, Enclosure 8, paragraph 4.b., for a drilling Reserve officer Board of Inquiry to be properly constituted, one of the members of the Board of Inquiry must be a "drilling Reservist"/ "member of the Selected Marine Corps Reserves." Plaintiff's counsel's statements at oral argument in this court as to Colonel Maita's billet as Director of the Office of Marine Forces Reserves and that Colonel Maita "presid[ed] on two Boards of Inquiry within two weeks"[36] are the only two pieces of evidence in the record to which plaintiff cites in support of his argument. (alteration added).

Under the requirements of SECNAVINST 1920.6C, Enclosure 8, ¶ 4.b. and Department of Defense Instruction 1332.30 § 4.3, to have a properly composed Board of Inquiry in cases in which the respondent is a reservist, at least one Board member must be commissioned as a Reserve officer, serving on active duty or in an active status, and must hold a certain grade. SECNAVINST 1920.6C, Enclosure 8, ¶ 4.b. (Aug. 26, 2015); Department of Defense Instruction 1332.30 § 4.3.(b)–(c) (May 11, 2018). The plain language of SECNAVINST 1920.6C, Enclosure 8, ¶ 4.b. (Aug. 26, 2015) and Department

---

[36] The court notes that plaintiff sought to attach a declaration of Raymond M. GarciaCortijo to his supplemental brief for the court's review. In a separate Order, after reviewing the declaration, the court determined that the declaration of Raymond M. GarciaCortijo was not necessary for the court to reach a determination on the parties' cross-motions for judgment on the Administrative Record.

of Defense Instruction 1332.30 § 4.3.(b)–(c) (May 11, 2018) indicates that, as the Advisory Opinion stated, "[t]here is no prohibition against a Reserve member being in a 'full time status' or in the Active Reserves." See SECNAVINST 1920.6C, Enclosure 8, ¶ 4.b. (Aug. 26, 2015); Department of Defense Instruction 1332.30, § 4.3.(b)–(c) (May 11, 2018) (alteration added). Notably, all SECNAVINST 1920.6C requires is that the designated Reserve officer, and all other officers sitting on a Board of Inquiry, be "serving on active duty or in an active status." SECNAVINST 1920.6C, Enclosure 8, ¶ 4.b. (Aug. 26, 2015). SECNAVINST 1920.6C does not indicate that the Reserve officer cannot be serving on active duty while sitting as the designated Reserve officer on a reservist's Board of Inquiry. See SECNAVINST 1920.6C, Enclosure 8, ¶ 4.b. (Aug. 26, 2015). Because neither SECNAVINST 1920.6C nor Department of Defense Instruction 1332.30 require that the designated Reserve member sitting on a Board of Inquiry be a "drilling reservist" or in a part-time status, plaintiff's allegations alone do not demonstrate that Colonel Maita was "an Active Reserve Marine on full-time active duty." Therefore, plaintiff has not demonstrated that plaintiff's Board of Inquiry was improperly composed when Colonel Maita sat as the designated Reserve officer. See SECNAVINST 1920.6C, Enclosure 8, ¶ 4.b. (Aug. 26, 2015); see also Department of Defense Instruction 1332.30, § 4.3.(b)–(c) (May 11, 2018).

Plaintiff also argues that

the AR suggest [sic] that the BOI was not properly constituted and for this reason, its findings and recommendations should be set aside. See Wisotsky v. United States, 69 Fed. Cl. 299, 311 (2006) and Caldbeck v. United States, 109 Fed. Cl. 519, 531 (2013).

(alteration added). Plaintiff's citations to Wisotsky v. United States, 69 Fed. Cl. 299 (2006) and Caldbeck v. United States, 109 Fed. Cl. 519 (2013) do not help plaintiff's argument. Wisotsky and Caldbeck each support the proposition that if a Board of Inquiry is improperly composed, in violation of military regulations such as SECNAVINST 1920.6C (in the case of Wisotsky, a predecessor version, SECNAVINST 1920.6A CH-2), it could render the officer's separation from the military unlawful, if the improper composition of the Board of Inquiry is not a harmless error. See Wisotsky v. United States, 69 Fed. Cl. at 306, 309–11; Caldbeck v. United States, 109 Fed. Cl. at 533–34. Unlike the above captioned case, however, Wisotsky v. United States and Caldbeck v. United States do not include any discussion about whether SECNAVINST 1920.6C requires a particular type of reservist to sit on a Reserve officer's Board of Inquiry. Therefore, Wisotsky v. United States and Caldbeck v. United States do not help in assessing whether Colonel Maita was a Reserve officer and, thus, whether plaintiff's Board of Inquiry was properly composed under SECNAVINST 1920.6C. Furthermore, Wisotsky v. United States and Caldbeck v. United States would only be relevant to plaintiff's case if plaintiff could establish that his Board of Inquiry was improperly composed because there was no Reserve officer as required by SECNAVINST 1920.6C. As indicated above, plaintiff has not demonstrated that plaintiff's Board of Inquiry was not properly composed.

Allegation of No Minority Member During the Board of Inquiry Proceedings

In plaintiff's motion for judgment on the Administrative Record, plaintiff also alleges that the BCNR acted capriciously and arbitrarily when the BCNR did not grant plaintiff relief based upon plaintiff's allegations regarding the failure to have "a minority member during the BOI proceedings." In response, defendant argues that "[t]he BCNR also rationally rejected Major Sparks' argument that he was denied due process and fair treatment because his board of inquiry lacked a minority member." (alteration added). On plaintiff's DD Form 149, the Application for Correction of Military Record, plaintiff wrote under the section "Why Should This Correction Be Made?" that he "was not allowed to request a minority member." In his written petition that he submitted with his BCNR application, plaintiff stated:

> Lt Col (ret.) Sparks was denied due process because there were no minority members present at the BOI. Lt Col (ret.) [sic] Army Regulation 600-8-24 allows minority officers to request a minority member during elimination board proceedings. Because SECNAVINST 1920.6C does not offer the same protections, Lt Col (ret.) Sparks was denied due process and fair treatment.

(alteration added).

> The Advisory Opinion provided to the BCNR stated, in relevant part:

> Applicant also argues he was denied due process and fair treatment because "there were no minority members present at the BOI." Applicant notes that Army regulations allow a respondent to request a minority member, but reference (d) [SECNAVINST 1920.6C] does not. Applicant has not cited to any case law nor provided any argument to explain why procedural differences between the two regulations would constitute a due process violation. Furthermore, Applicant did not provide any evidence to support his assertion that none of the members on his panel were a minority. Finally, Applicant waived the issue by neither requesting a minority member, nor objecting to any of the members who were seated for his BOI.

(alteration added). In his December 26, 2022 response to the Advisory Opinion, plaintiff stated:

> LtCol (ret) Sparks should have had a minority officer during his BOI. While this requirement is not listed in SECNAVINST 1920.6C, fairness and justice strongly suggest this – the optics of three white officers eliminating an African American officer with an OTH [Other Than Honorable characterization of service] after 35 years of honorable service based on a false allegation without even explaining how they arrived at their recommendation – especially in light of the Department of the Navy instituting policies to combat systematic racism and implicit bias in the Navy

> and the USMC conceding there was no personal jurisdiction – are most concerning and warrant immediate involvement by the BCNR.

(alteration added; footnotes omitted).

> The BCNR decision determined:

> After a thorough review and consideration of your contentions, as discussed above, the Board [the BCNR] concluded there was insufficient evidence to support your contentions regarding errors in the BOI constitution or violations of due process. Additionally, although one might consider it a "best practice" for the BOI to include a minority member, the Board [the BCNR] determined it was not error or unjust for a minority member to not be a BOI member and, noting your civilian counsel did not object to the lack of a minority member, concluded the BOI was properly convened.

(alterations added). Before the BCNR, plaintiff conceded that SECNAVINST 1920.6C does not require a minority member on Boards of Inquiry. Plaintiff stated in his response to the Advisory Opinion: "LtCol (ret) Sparks should have had a minority officer during his BOI. While this requirement is not listed in SECNAVINST 1920.6C, fairness and justice strongly suggest this." Although plaintiff suggested to the BCNR that the Army regulations require a minority member on Boards of Inquiry, plaintiff's case is not governed by the Army's regulations, but the Navy's regulations.

Moreover, before this court, plaintiff's motion for judgment on the Administrative Record argued there was not "a minority member during the BOI proceedings," and plaintiff's reply brief in this court stated: "Plaintiff also pointed out that there was no minority member assigned to the BOI, and that his characterization of service was improperly determined." These are the only two references to the issue of a minority member on the Board of Inquiry before this court and plaintiff did not further address the issue of a minority member on the Board of Inquiry at oral argument in the above captioned case. Plaintiff does not provide a basis in this court why the BCNR was incorrect when the BCNR did not find the lack of a minority member on plaintiff's Board of Inquiry was a material error. Additionally, plaintiff has not demonstrated to this court that he requested a minority member sit on his Board of Inquiry, nor that the government denied such a request. The BCNR explained "the Board [the BCNR] determined it was not error or unjust for a minority member to not be a BOI member and, noting your civilian counsel did not object to the lack of a minority member [before the Board of Inquiry], concluded the BOI was properly convened." (alterations added). The Advisory Opinion also explained that plaintiff "did not provide any evidence to support his assertion that none of the members on his panel were a minority. Finally, Applicant waived the issue by neither requesting a minority member, nor objecting to any of the members who were seated for his BOI." Plaintiff himself did not raise any objections about the members of his Board of Inquiry during his Board of Inquiry proceeding, and made no challenges during voir dire of the Board of Inquiry members.

## CONCLUSION

For all the foregoing reasons discussed above, the court **DENIES** plaintiff's motion for judgment on the Administrative Record and the court **GRANTS** defendant's cross-motion for judgment on the Administrative Record. Plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED**.

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**